SWAYNE *v.* CITY OF HATTIESBURG.*

(In Banc. March 7, 1927.)

[111 So. 818.    No. 26206.]

1. CONSTITUTIONAL LAW. *Municipal corporations. Property is not taken without due process by statute authorizing assessment of cost of improvement on abutting property, though exceeding benefits (Laws 1924, chapter 194, section 5; Constitution U. S. Amendment 14, section 1).*

   Laws 1924, chapter 194, section 5, authorizing the cost of special street improvement to be assessed against the abutting property according to frontage, even as to property so burdened more than it is benefited, does not take property without due process, in violation of Constitution U. S. Amendment 14, section 1; the result coming through exercise of the taxing power of the state, which is unlimited.

2. EMINENT DOMAIN. *Inhibition against taking property except on due compensation has no application to taxing property (Constitution 1890, section 17).*

   Constitution 1890, section 17, prohibiting the taking or damaging of private property for public use except on due compensation being first made to the owner, has no application to taxing of property for public purposes which may result in the property being forfeited for nonpayment of taxes.

3. CONSTITUTIONAL LAW. *Due process clause would not be violated by statute authorizing municipal authorities to organize special improvement district without requiring notice (Constitution, U. S. Amendment 14, section 1).*

   A statute authorizing municipal authorities to organize a special improvement district and assess the cost thereof against the abutting property owners would not violate the due process clause of Constitution, U. S. Amendment 14, section 1, if not pro-viding for notice to such owners of the purpose of such authorities so to do.

4. MUNICIPAL CORPORATIONS. *Manner of publication of notice of pur-pose to organize special improvement district held controlled by supplemented statute (Laws 1924, chapter 194, section 3; Laws 1912, chapter 260).*

   The manner of publication of notice of purpose of municipal au-thorities to organize a special improvement district and assess the cost thereof against the abutting property owners—for which notice Laws 1924, chapter 194, section 3, provides without pro-viding for manner of publication—is controlled by Laws 1912, chapter 260, of which the later statute is supplementary.

5. CONSTITUTIONAL LAW. *Property is not taken without due process by statute authorizing assessment of incidental . expenses of special street improvement (Laws 1924, chapter 194; Constitu-tion U. S. Amendment 14, section 1).*

   Laws 1924, chapter 194, does not violate Constitution U. S. Amend-ment 14, section 1, because authorizing abutting property to be charged with the engineering and inspection cost of special street improvement and the cost of issuance of bonds to raise funds to pay for the improvement, they being part of the actual cost of the improvement.
   ETHRIDGE and McGOWEN, JJ., dissenting.

---

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, p. 1257, n. 53, 63, 64; p. 1258, n. 72; Eminent Domain, 20CJ, p. 527, n. 89; p. 529, n. 99; Municipal Corporations, 28Cyc, p. 1104, n. 25, 30; p. 1122. n. 15; p. 1129, n. 83; p. 1153, n. 42; Taxation, 37Cyc, p. 724, n. 33.

APPEAL from chancery court of Forrest county.

HON. T. P. DALE, Chancellor.

Injunction suit by Mrs. Jas. A. Swayne against the city of Hattiesburg. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Hannah & Simrall,* for appellant.

We contend that the two ordinances or resolutions adopted by the appellee for the paving of Sixth avenue are void. These two resolutions are authorized by and follow chapter 194, Laws of 1924, which statute also is void and unconstitutional.

I. The statute permits the governing authority of the municipality to make the improvements enumerated in section 2 of the statute in and at its discretion and to tax the cost thereof against the property abutting on the street improved without regard to the question of whether or not the benefits accruing to the property will equal or exceed the cost of the improvement.

The resolutions here in question do not make any finding or attempt to adjudicate that the benefits accruing to the property abutting on that part of Sixth avenue to be improved will be equal to or exceed the cost of making the improvement. The statute does not require the governing authority of the municipality to make any such finding or even to investigate this question.

This feature of the law is in direct conflict with the Fourteenth Amendment to the Constitution of the United States, and section 14, 17, and 24 of the Constitution of Mississippi. See *Macon* v. *Paty,* 57 Miss. 378.

II. The two resolutions in question and the statute in question are void because no proper notice was given to the appellant of the city's intention to pave the street. We further contend that chapter 194, Laws of 1924, is also void because it does not provide for the giving of any proper notice to the property owners of the city's intention to pave the street.

We submit that there is just as much evil in leaving the municipal authorities free to fix the notice as there would be in permitting them to proceed without notice. The appellee cannot look to chapter 260, Laws of 1912, to

make the notice given in this case valid. Chapter 194, Laws of 1924, provides a complete scheme for the making of local improvements and must stand or fall by itself.

III. The two resolutions adopted by the appellee are void because they seek to charge the appellant and her property with the cost of many items that are not legally chargeable to her or her property.

The only theory on which the property owner can be charged with a part of the cost of paving a street is that that part of the street immediately in front of and adjoining his property is improved and that his property is thereby benefited. We do not think that the paving of street, alley and avenue intersections can come within the class of improvements which may be properly assessed to the property owner.

We are not unmindful of *Stingily* v. *Jackson,* 140 Miss. 19, 104 So. 465, in which the court considered and passed upon the validity of chapter 194, Laws of 1924. We respectfully submit that the court was in error in rendering the decision it did in that case.

*Flowers, Brown & Hester* and *D. E. Sullivan,* for appellee.

I. It is contended that chapter 194, Laws of 1924, is unconstitutional because it permits the governing authorities of municipalities to make the improvements enumerated in section 2 thereof at their discretion and to tax the cost of same against the property abutting on the street improved without regard to the question of whether the benefits accruing to the property will equal or exceed the cost of the improvement.

The 1924 act leaves the matter as to what streets shall be improved to the discretion of the governing bodies of the municipalities, but in section 3 of the act requires the adoption of a resolution declaring the proposed im-

provement necessary and giving certain information relative thereto. In determining whether it is necessary for a certain street or part of a street in a municipality to be improved the governing body must take many things into consideration: The size and growth of the municipality; the location of the street and its use; how occupied; the cost and many other things. And in deciding that it is necessary for a certain street or part of a street to be improved the deciding authority takes into consideration the amount of benefits to be received by owners of abutting property. The legislature saw fit, and wisely so, to delegate the matter of determining the need for and the making of special improvements in municipalities to their governing authorities and vested them with full control thereof and as long as there is no question of arbitrary exercise or abuse of discretion by the governing authorities, the matter of benefits accruing to abutting property cannot be gone into. *Browning* v. *Hooper,* 70 L. Ed. 153.

It is urged that the cost of that part of the improvement in front of the property of appellant will be in excess of the benefits that will accrue to her property but it is admitted that the benefits accruing to all the abutting property will be greater than the total cost of the improvement. *Hancock* v. *City of Muskogee,* 250 U. S. 454, 459, 63 L. Ed. 1081, 1084, 39 Sup. Ct. Rep. 528, is very similar to the present case. See, also, *Withnell* v. *Ruecking Constr. Co.,* 249 U. S. 63, 63 L. Ed. 479, 483, 39 Sup. Ct. Rep. 200; *St. Louis* v. *W. U. Tel. Co.,* 149 U. S. 465, 37 L. Ed. 810, 13 Sup. Ct. Rep. 990.

Chief Justice SMITH in *Stingily* v. *City of Jackson,* quoted with approval from *Spencer* v. *Merchant,* 125 U. S. at page 355, 8 Sup. Ct. 926, 31 L. Ed. at 767. *Macon* v. *Patty,* 57 Miss. 378, does not sustain appellant's position. It simply held that the right to decide that a sidewalk was out of repair was in the board of mayor and aldermen and could not be delegated by them to street committeemen, as was attempted in that case.

The question of accruing benefits is not open to owners of abutting property after the governing authorities of municipalities have declared special improvements necessary, proceeding under chapter 194, Laws of 1924. *Smith* v. *Aberdeen,* 25 Miss. 458, settles this question. In the act of 1924, as in all prior statutes on the subject, much discretion is left with the governing authorities of the municipalities. And it is very essential that this be true. It would be impossible for the governing authority to take up separately each piece of property abutting on the improvement and calculate the exact benefits that would accrue to every piece of property as a result of the improvement.

The fact that one piece of property is not benefited as much as some other piece of property abutting on the improvement, or the fact that one property owner thinks that the portion of the cost of the improvement that his or her property will be required to bear is greater than the benefits that will accrue to it as a result of the improvement is not enough to prevent the improvement being made. It is not possible to have an improvement scheme that will work absolute equality in every instance of its operation.

When the governing authority has found and declared special improvement necessary, and there being no question of abuse or arbitrary exercise of discretion, the question of accruing benefits is not open to owners of abutting property. *Nugent* v. *City of Jackson,* 72 Miss. 1040, 18 So. 493.

II.   The second contention made by counsel for appellant is that the resolutions and 1924 act are void because proper notice was not given to the appellant of appellee's intention to pave Sixth avenue. Section 3 of the Act of 1924 provides for notice. Section 6, chapter 260, Laws of 1912, provides that when the resolution finding and declaring special improvements necessary is passed, it shall be published in some newspaper in the

municipality once a week for three successive weeks. This is still the law with reference to notice in cases of this kind. The resolution in this case was published. It is true that section 3 does not prescribe the form of notice to be given; but when all the sections of the two acts are considered together, the law does say what the notice shall contain.

Proper notice was given in this case that the improvement was to be made. Opportunity was given abutting property owners to enter objections. If two-thirds of them had made objection, the improvement would not have been undertaken; but this number did not protest against the improvement.

III. The next objection urged by counsel for appellant against the resolutions for the improvement in question and against chapter 194, Laws of 1924, is that it is attempted thereunder to charge appellant's property with a proportionate part of engineering and inspection costs, all costs and estimated costs for the issuance of bonds (meaning bonds issued to secure money to pay for the improvement), interest accrued while improvement is under construction and for six months thereafter. The answer to this contention is that these items constitute a part of the cost of the improvement. *Lenhardt* v. *Yonkers,* 187 N. Y. S. 27; *Buckwalter* v. *Henrion,* 208 (Kan.) Pac. 645; *Chicago* v. *Lake Forest University,* 127 N. E. 352; *South Shilshole Place* v. *Seattle* (Wash.), 112 Pac. 228; *Shryock* v. *Harmenen* (Wash.), 112 Pac. 377; *Bailey* v. *Henrion* (Kan.), 194 Pac. 928; *Hurd* v. *Sanitary Sewer Dist. of Harvard* (Neb.), 191 N. W. 438; *Sudre* v. *Burlington* (Iowa), 117 N. W. 1082; *Irelan* v. *Portland* (Ore.), 179 Pac. 286; *City of Tulsa* v. *Weston,* 216 Pac. 98; *City of Sand Springs* v. *Hohl,* 216 Pac. 138.

ANDERSON, J., delivered the opinion of the court.

Appellant brought her bill in the chancery court of Forrest county against appellee seeking to enjoin the

latter from paving a part of Sixth avenue, one of appellee's streets. Appellee demurred to the bill. The demurrer was sustained, and, appellant having declined leave to amend her bill, a final decree was rendered dismissing the bill. From that decree appellant prosecutes this appeal.

Appellant made the following case by her bill: Appellee was proceeding under chapter 194 of the Laws of 1924 to pave a part of one of its streets, Sixth avenue.

Appellee has a commission form of government under chapter 108 of the Laws of 1908. On July 22, 1906, appellee's mayor and commissioners adopted a resolution providing for the paving of a certain part of Sixth avenue described in the resolution, at the expense of the abutting property owners. The resolution, leaving off the formal parts, is in the following language:

"That in the judgment of the mayor and board of commissioners, it is necessary to pave Sixth avenue, commencing at the present pavement in Mamie street and ending at Concart street in said city, and that the cost of such paving, including the paving of street, avenue, and alley intersections, the laying of water mains, storm sewers, connections of sanitary sewer with abutting property, the construction of curbs and gutters and all engineering and inspection cost, including a proper proportion of the compensation, salaries, and expenses of the engineering staff of the municipality, properly chargeable to such improvements, all costs and estimated costs of the issuance of the bonds authorized by law and interest accrued while the improvement is under construction, and for six months thereafter, should not be paid out of the general improvement fund, but that a special tax shall be levied on the property owners for the purpose of paying for such improvements and all other expenses as herein enumerated, as provided in chapter 194 of the Acts of 1924 of the state of Mississippi.

"Be it further resolved that the plans and specifications for said paving, prepared by the city engineer and

on file with the city clerk at his office, are hereby adopted and approved, and said special improvement shall be done according to said plans and specifications. The nature and the extent of the work, the character of the material to be used, the width of the paving of the avenue, and the location and terminal points of the avenue on which said improvements are to be made are as follows, to-wit:

"Sixth avenue shall be paved from the present pavement in Mamie street to and ending at Concart street for a width of twenty-four feet, and some one type of the specifications for paving referred to in the petition of the abutting owners, now on file, praying that said street be paved at the expense of the abutting owners, which types of pavement are set out in the specifications, now on file, will be adopted as the pavement to be used, if it shall be finally determined to pave said street, after the opportunity to abutting property owners to protest has been given as required by law.

"The mayor and board of commissioners shall meet at the city hall, in the city of Hattiesburg, Miss., at 2 o'clock p. m. on the 12th day of August, 1926, being more than fifteen days after the date of the first publication of this resolution, to hear any objections or remonstrances that may be made against said improvement by the abutting property owners. At said meeting or at any time and place to which the same may be adjourned, any person aggrieved may appear in person, by attorney, or by petition and may object to or protest against said improvement. The mayor and board of commissioners will hear all objections and protests against said improvements, and will determine whether the improvement shall be made and how the cost thereof shall be paid, provided that if a majority of the property owners actually residing on the property owned by them and included within that part of the street to be paved, or otherwise, actually occupying property owned by them and included with-

in the area shall file a protest, then the proposed improvement shall not be made.

"It is ordered that the city clerk cause this resolution to be published as provided by law."

Appellant alleged in her bill that the cost of the paving chargeable to her property would be greater than the benefits received by her property.

A certified copy of the resolution was published in the Hattiesburg American, a daily newspaper published in the city of Hattiesburg, in the issues of said paper appearing on July 23, 1926, July 30, 1926, and August 6, 1926. On August 12, 1926, appellant appeared before appellee's mayor and commissioners and protested against the proposed paving project upon the ground that the *pro rata* part of the cost of the paving to be assessed against her property would be much greater than the actual benefits accruing to her property from the paving. At the meeting of the mayor and commissioners held on August 12, 1926, a majority of the abutting property owners on the street proposed to be paved did not appear and protest against such paving, and thereupon at that meeting the mayor and commissioners adopted a final ordinance in accordance with the preliminary resolution directing that the paving be done in accordance with the statute. When the bill in this case was filed the appellee was proceeding to do the proposed paving in the manner provided by the statute.

Appellant does not question that the statute was being complied with, but relies alone for a reversal of the judgment upon the ground that the statute is unconstitutional. Appellant contends that the statute violates the due process clause of the Fourteenth Amendment (section 1) of the Federal Constitution, because under the rule laid down by section 5 of the act for apportioning the cost of the special improvement among the abutting property owners, the result may be, and is in the present case, to make the cost to some of the abutting

property owners greater than the benefits received by their property. Section 5 of the act provides as follows:

"The resolution determining to proceed with the said improvement may direct that the cost and expense of the improvements hereby authorized, or such part as the governing authority shall charge upon the property benefited; in which resolution the governing authority shall direct that the whole or such part of the cost and expense thereof, as it shall fix, shall be assessed against the property abutting upon the improvement, according to the frontage thereof; in the following manner by taking the whole number of front feet improved and dividing the total cost of the whole improvement thereby and multiplying the quotient by the number of feet front contained in such abutting lot or piece of ground, and the result shall be assessed by the board as the amount of the special tax to be assessed against each lot or piece of ground, except the cost of improvements as to sidewalks, curbs, and gutters, the entire cost of which shall be assessed against the property on which it abuts for its entire frontage only."

It will be observed that under the statute the cost of improvement charged to the abutting property is according to the frontage of such property, and that the amount chargeable to each piece of property is determined by taking the whole number of front feet improved and dividing the total cost of the whole improvement thereby and multiplying the quotient by the number of feet front contained in the particular abutting property in question. Appellant charges in her bill, and it is admitted by the demurrer, that in thus apportioning the cost under the statute her property is benefited less than the amount of the assessment chargeable against it. Appellant's position is that thereby her property is taken without due process to the extent that the cost of the improvement exceeds the benefits. This question was not decided in *Stingily* v. *City of Jackson,* 140 Miss. 19, 104 So. 465.

"Where a local improvement territory is selected, and the burden is spread by the legislature or by a municipality to which the state has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits." *Browning* v. *Hooper,* 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330; *Valley Farms Co.* v. *Westchester County,* 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; *Hancock* v. *Muskogee,* 250 U. S. 454, 459, 39 S. Ct. 528, 63 L. Ed. 1081, 1084; *Withnell* v. *Ruecking Construction Co.,* 249 U. S. 63, 69, 39 S. Ct. 200, 63 L. Ed. 479, 483; *Daily* v. *Swope,* 47 Miss. 367, 387.

The determination by the municipal authorities of the relative amount of benefits and burdens to the abutting property owners is final. If the result actually is that the property of the abutting owner is burdened more than it is benefited, that result would come about through the exercise of the taxing power of the state, which is unlimited. The state or any political subdivision of the state with the authority of the state may tax property for public purposes to the extent of confiscation. And a special improvement assessment under such statute as the one here involved is the exercise of the taxing power of the state for public purposes. *City of Pascagoula* v. *Valverde,* 138 Miss. 399, 103 So. 198. Section 17 of the Constitution of this state, which prohibits the taking or damaging of private property for public use except on due compensation being first made to the owner, has no application to the taxing power of the state; it only has application to the taking of property for public use, and has nothing to do with the taxation of property for public purposes, which may result in the property being forfeited for the nonpayment of taxes.

Appellant contends that the statute violates the due process clause of the Fourteenth Amendment of the Federal Constitution for the further reason that it provides for no notice to the abutting property owners of the purpose of the municipal authorities to organize the special

improvement district and assess against their property
the cost thereof. Appellant's contention is that the abut-
ting property owners were entitled to a hearing before
the municipal authorities on both of those questions.
In the first place, under the due process clause of the
Fourteenth Amendment, no notice to the property own-
ers of the purpose of the mayor and commissioners to
organize the taxing district and assess the cost against
their property was necessary to be provided by the stat-
ute. It was not necessary to due process that they have
a hearing on either proposition. The legislature of a
state may directly, by legislative enactment, organize
such a taxing district and assess the cost against the prop-
erty owners, or the legislature may delegate that author-
ity to a local administrative board, such as the mayor
and commissioners of a municipality. *Hancock* v. *Mus-
kogee, Withnell* v. *Ruecking Construction Co., Browning*
v. *Hooper, supra,* and *Missouri Pacific Railroad Co.* v.
*Western Crawford Road Improvement District,* 266 U.
S. 187, 45 S. Ct. 31, 69 L. Ed. 237. However, section 3
of the statute involved provides for notice. That sec-
tion follows:

"When the governing authority of any municipality
shall determine to make any local or special improvement
hereunder, the cost of which or any part thereof, is to
be assessed against the property benefited, it shall adopt
a resolution declaring necessary the proposed improve-
ment describing the nature and extent of the work, the
general character of the material to be used, and the lo-
cation and terminal points of the streets, highways,
boulevards, avenues, squares, alleys or parks, or parts
thereof, in which said improvements are to be made. Said
resolution shall fix a date when the governing authority
of said municipality shall meet, which shall be not less
than fifteen (15) days after the date of the first pub-
lication of the notice herein provided for, to hear any ob-
jections or remonstrances that may be made to said im-
provements. Notice declaring the work necessary shall

be notice to the property owners that the work has been declared necessary. In publishing said resolution, declaring the work necessary, the plans and specifications of said work need not be published but may be referred to as being on file in the office of the city clerk or city engineer.''

It is true, as contended by appellant, that the statute does not provide the manner of the publication of the notice, but that is controlled by chapter 260 of the Laws of 1912, of which chapter 194 of the Laws of 1924 is supplementary. *Stingily* v. *City of Jackson, supra.* The notice was published in the manner and for the time prescribed by chapter 260 of the Laws of 1912.

Appellant contends that the statute violates the Fourteenth Amendment of the Federal Constitution in that the act authorizes—and appellee sought to carry out its provisions in that respect—that appellant's property be charged with its proportionate part of the engineering and inspection cost of the improvement and the cost of the issuance of the bonds to raise funds to pay for the improvement, including the interest thereon for six months to cover the period of construction of the improvement. These expenses are a part of the actual cost of the improvement. There is as much reason for charging them as a part of the cost of the improvement as there is any other portion of it. *Leonhardt* v. *Yonkers,* 195 App. Div. 234, 187 N. Y. S. 27; *Buckwalter* v. *Henrion,* 111 Kan. 781, 208 P. 645; *Chicago* v. *Lake Forest University,* 293 Ill. 165, 127 N. E. 352; 28 Cyc. 1153.

We do not notice the other constitutional questions raised by appellant, because they are either decided adversely to appellant's contention in *Stingily* v. *City of Jackson, supra,* or we do not deem them of sufficient seriousness to call for a discussion.

*Affirmed.*

Ethridge, J.

I dissent from both the construction of the statute by the majority opinion and the constitutionality of the stat-

147 Miss.—17.

ute with this construction placed upon it. I do not know whether I can strengthen the dissenting opinion in *Stingily* v. *City of Jackson,* 140 Miss. 57, 104 So. 465 et seq., but the question is so important that I feel called upon to make some additional observations upon these propositions:

In the first place, I think the statute authorizing the improvement to be made against the abutting property was intended solely to be applied where the abutting property was equally benefited, and that the cost to be taxed against such property should not exceed the benefits derived from the improvement to the property. In the first section of chapter 194, Laws of 1924, giving the governing authority power to cause local improvements designated in the statute to be made wholly, or in part, at the cost of the property owners benefited thereby, by levying and collecting special assessments for special benefits, etc., it was intended only to confer the power on condition of actual benefits received, and it was not the purpose of the legislature to exact more of the owner of abutting property to the improvement than the benefit he might receive from such improvement. Throughout the act the term "property benefited" is used, as showing that it was the benefit which might be assessed, and not an arbitrary sum existing only in the imagination of the city authorities. In section 3 of said act, it is further provided that when the governing authority of any municipality shall determine to make any local or special improvement thereunder, the cost of which, or any part thereof, is to be assessed against the property benefited, it shall adopt a resolution declaring necessary the proposed improvement, describing the nature and extent, etc., which indicates clearly that the legislature only intended to assess against the benefit, and it was not the purpose of the legislature to impose a burden upon the property owner in excess of the benefits derived specially from such improvement. In section 4 of said act, it is further provided that at said meeting, of which no-

tice provided in section 3 was given, any person aggrieved
may appear in person, by attorney, or by petition and
object to or protest against said improvement, and then
the governing authority shall consider the objections
and protest, if any, and may confirm, modify, or rescind
the resolution of necessity, and shall determine whether
said improvement shall be made and how the cost there-
of shall be paid. It will be noted from what has already
been said that the governing authorities are not required
to assess the total cost against the property benefited,
but only such part as in their judgment may be necessary,
which is to say, in their judgment will be benefited, and
not to exceed the benefit so derived. Section 5 of said
act provides further that if the governing authorities
determine to proceed with the improvement authorized
"or such part as the governing authority shall charge
upon the property benefited; . . . the governing au-
thority shall direct that the whole or such part of the
cost and expense thereof, as it shall fix, shall be assessed
against the property abutting upon the improvement, ac-
cording to the frontage thereof," etc. This clearly con-
templates, in my opinion, that the governing authorities
are not to tax the costs in excess of the benefits. In deter-
mining the costs and benefits, the governing authorities
must keep within the limits of the benefits, while they
are apportioning this charge against the property accord-
ing to the front-foot rule. It is not contemplated that
they should exceed the cost to the lowest benefit to any
property upon that basis. It must be remembered that
the improvement is not entirely for the local property,
but for the whole public, and the act contemplates that
the governing authorities shall apportion this cost be-
tween the abutting property and the general public so
as not to exceed the benefit conferred on any piece of
property. I think the statute is perfectly capable of this
construction without doing the least violence to the lan-
guage used.

Section 6 of the act further provides that the governing authorities shall give notice as to the time said authorities will meet to hear and determine any objections or defenses, and assessments shall be made and apportioned in the manner fixed by the resolution of the governing authorities determining to proceed with the improvement. It is also provided that:

"The owner of any property assessed for an improvement, or any part having an interest therein may appear at the time and place fixed for said hearing and object to the proposed assessment against the property or the amount thereof. The governing authority of the municipality shall hear and determine all objections and protests to the proposed assessment, under such reasonable rules and regulations as it may adopt."

And at such meeting, or an adjourned meeting, the governing authorities may alter, change, or correct any assessment, provided, however, "that no assessment shall be increased without notice to the owner of the property." It is then provided that:

The "property owner aggrieved by the decision of the governing authority may appeal to the circuit court in the manner allowed in such cases by section 81 of the Code of 1906, and the judgment on appeal shall be as provided by section 81 of the Code of 1906."

This clearly contemplates that the owner or other interested person shall have a right to show that his property is not benefited, or, if benefited, not benefited to the extent assessed against him, upon which question he is entitled to a judicial hearing with the right to appeal. Section 81 of Code of 1906 reads as follows:

"Any person aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town, or village, as to the assessment of taxes, may, within five days after the adjournment of the meeting at which such decision is made, appeal to the circuit court of the county, upon giving bond, with sufficient sureties, in double the amount of the matter in dispute, but never

less than one hundred dollars, payable to the state, and conditioned to perform the judgment of the circuit court, and to be approved by the clerk of such board, who, upon the filing of such bond, shall make a true copy of any papers on file relating to such controversy, and file such copy, certified by him, with said bond, in the office of the clerk of the circuit court, on or before its next term; and the controversy shall be tried anew in the circuit court at the first term, and be a preference case, and, if the matter be decided against the person who appealed, judgment shall be rendered on the appeal bond for damages at the rate of ten *per centum* on the amount in controversy and all costs. If the matter be decided in favor of the person who appealed, judgment in his favor shall be certified to the board of supervisors, or the municipal authorities, as the case may be, which shall conform thereto, and shall pay the costs.''

It may be that the appellant is barred from prosecuting the present suit by failure to take the appeal, and if the majority opinion proceeded upon this idea, it would probably not be necessary to decide the constitutional question involved. It is familiar learning that the courts will not decide a constitutional question until it is necessary to do so to dispose of litigation.

Section 7 of chapter 194, Laws 1924, carries out this idea by the following provisions:

''Provided, however, that the governing authority of the municipality may by resolution confer upon the property owners who admit the legality of the assessment the privilege of paying the assessment in not exceeding ten equal installments with interest from the date of the confirmation at the rate of six per cent. *per annum.* Any property owner who shall not have taken an appeal from the assessment, as provided in section 6 of this act, shall upon failure to pay said assessment in full within ninety days from the date of confirmation be deemed to have elected to pay said assessment in installments as herein provided and he shall be deemed to have admitted the

legality of the assessment and shall thereby waive all right to contest the validity thereof.''

This seems to be limiting the contestant to a right of appeal to test the legality of the proposed assessment, if the board assesses it against him, and if so the provisions of section 6 afford him an ample remedy, where all defenses can be made, and a subsequent injunction will not be proper. The appellant by his bill largely attacks the constitutionality of the act upon the theory that appellant's property was assessed for benefits in excess of the benefits conferred, and that other property owners in the district were assessed at less than the benefits conferred. This, of course, would be a question of fact, and that objection would not rise on the face of the act, but would be an unconstitutional administration of the act, if my view of the meaning of the act is correct. And construing the statute, we will construe it, if possible, so as to attribute to the legislature a purpose not to violate the constitutional principles, or to perpetrate injustice upon the citizens of the state.

In *Dunn* v. *Clinghan,* 93 Miss. 310, 47 So. 503, the court held an unjust or unwise purpose in a statute will not be imputed to the legislature which enacted it when any other reasonable construction is possible.

In *Board of Education* v. *M. & O. R. R. Co.,* 72 Miss. 236, 16 So. 489, the court held that in order to effectuate the evident purpose of a statute, the courts will if necessary depart from a literal interpretation and give it a broader or more constricted meaning than its 'mere words import.

In 25 R. C. L., section 258, p. 1022, the rule is stated as follows:

''It is to be presumed that the legislature did not intend a law to work a hardship or injustice and it is a reasonable and safe rule of construction to resolve any ambiguity or absurdity in a statute in favor of a just and equitable operation of the law. The terms employed by the legislature are not to receive an interpretation

which conflicts with acknowledged principles of justice if another sense, consonant with these principles can be given to them. It is a universal rule in the exposition of statutes that the intent of the law, if it can be clearly ascertained, shall prevail over the letter, and this is specially true where the precise words, if construed in their ordinary sense, would lead to manifest injustice.''

In *Daily* v. *Swope,* 47 Miss. 367 cited in the main opinion, at page 386, it is said:

''Necessarily, a tax, whether levied for state revenue or for a local object, must be uniform in the sense of being apportioned equally upon all property selected by the legislature or the delegated taxing authority for its application. If imposed upon real estate, it must be upon all real estate in the same situation and condition, so that the burden on each parcel will bear a proportion to every other. The judicial department, in reviewing the acts of a co-ordinate department of the government, must impute proper motives, and a faithful effort to discharge public duties. It is not to be supposed, therefore, that it was the intent of the legislature to discriminate in favor of the property of one citizen at the expense of that of another, when both properties are in a like situation.''

In *Getzen* v. *Sumter County,* 89 Fla. 45, 103 So. 104, the supreme court of Florida, in the second syllabus, announced the rule as follows:

''An abuse, or an arbitrary or unreasonable exercise of a power conferred by law is not within the intendments of the law, organic or statutory, and the Constitution requires the courts to give a 'remedy' 'for any injury done' to personal or property rights, which includes an injury caused by an arbitrary or an unreasonable exercise of authority conferred, as well as by action taken without any authority whatever.''

It seems to me that to hold that the legislature intended or contemplated that a municipal authority under the guise of conferring benefits can assess costs against property largely in excess of the benefits would be the rank-

est kind of injustice, and we would not attribute to the legislature such injustice unless driven to that conclusion by the language of the statute so clearly expressed as to make it manifest that it was the legislative intent to perpetrate such injustice. Of course, when the legislature·has acted within constitutional authority it may enact unjust laws or just laws, and, in some cases, may work injustice to particular persons, but in conferring power upon subordinate bodies its purpose would be presumably to confer such powers as are consistent with justice and with constitutional principles. If the construction placed upon it by the majority opinion is correct, then, in my opinion, the act is clearly unconstitutional.

In determining a question of constitutionality, and especially in considering the decisions of the supreme court of the United States, we must recognize that the supreme court of the United States will not overrule the judgment of a state court upon the meaning of a state Constitution, and the decisions referred to in the majority opinion are limited to provisions of the Federal Constitution. There is nothing in the Federal Constitution that requires a state to separate the powers of government into three departments, or into any number of departments. So far as that Constitution is concerned, the state government may blend all the powers of the state government into one representative body. I will show later on, however, that the cases relied on in the majority opinion do not support this question, and that the United States supreme court has held, and now holds, that a citizen cannot be deprived of his property arbitrarily. So far as the Federal Constitution is concerned, there is nothing, as I recall, that prevents a state from taking private property for public use without any compensation whatever, provided it acts according to the due process and the equal protection law, treating all within the same territory, whether it be district, county, or state, equally and fairly. The state Constitution, however, is intended to pre-

vent what is done here, if the allegations of the bill be taken as true, as they must be upon demurrer.

Section 17 of the Constitution of 1890 is intended to restrain the government from taking private property for public use without due compensation being made. This section is not limited in its terms to any particular power of government, but operates against all the powers of government, and if a citizen's property is to be taken arbitrarily and placed in street improvement without equivalent benefits, then the section does not serve the purpose for which it was intended by the Constitution framers. It is expressly provided in this section that when an attempt is made to take private property for public use, the question whether it is for public use shall be a judicial question, and, as such, determined, without regard to legislative assertion, that such use is public. All other questions are judicial in their nature.

In *Town of Macon* v. *Patty,* 57 Miss. 378, 34 Am. Rep. 451 et seq., the court expressly held that section 17 in the form it existed at the time of that decision applied to all acts by the state, and in the ninth syllabus it was said:

"The constitutional prohibition against taking ffor public use without compensation, restrains not only the right of eminent domain, but all invasions of private property by public authority, including the exaction of money under the guise of taxation, beyond the limits of the taxing power."

The court there held that the provisions in the Bill of Rights, designed for security of citizens against their governments, should receive a liberal construction, favorable to the citizens, and against the state, and has been repeatedly reaffirmed by this court, as well as the supreme court of the United States.

In *Thompson* v. *Grand Gulf R. & Banking Co.,* 3 How. 240, 34 Am. Dec. 81, the court said: "It is a sound rule in construing Constitutions, that no word is to be rejected or disregarded which may have a material bear-

ing on the rights of the citizen, and such construction should be given as will best protect private rights, because Constitutions are limitations, which confine each department of the government to the exercise of such powers only as have been delegated."

In *Brien* v. *Williamson,* 7 How. 14, it was held: "A Constitution should be construed so as to effectuate, not defeat, the policy indicated by its framers."

And in *Falkner* v. *State,* 134 Miss. 253, 98 So. 691, it was quoted, together with the ruling announced by the supreme court of the United States. To the same effect are *Boyd* v. *United States,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, *Gouled* v. *United States,* 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647, and other cases that could be cited.

When we come to the decisions of the various states upon special assessments, and whether they are limited to benefits conferred, there is a division of authority, one line of cases holding that the benefits need not be actual, leaving property owners to be despoiled of their earnings for public benefit without any compensation, or without adequate compensation, which is, of course, unjust and contrary to constitutional principles. The majority opinion follows and adopts this line of cases. The other line of cases hold, to the contrary, that benefits must be equal, or exceed, assessments. This rule is just and fair, consistent with constitutional principles as well as fair dealing and common honesty. I think we should follow this line of decisions.

In 14 L. R. A., the case note at page 755 to *In re Bonds of Madera Irrigation District,* announced the doctrine that the expenses for local improvements may be assessed without regard to the benefits, and the editor of the L. R. A. series said that most of the cases on the subject, however, declare that local assessments for public improvements can be imposed only when the improvements clearly confer benefits on the property assessed, and only to the extent of the benefits conferred, citing many cases to this effect.

In 25 R. C. L., p. 13, it is said:

"The constitutional provision against taking private property for public use without compensation is only avoided when there is compensation by an equivalent of benefits. For the benefits received by the improvement the land is unquestionably liable to assessment and the assessment is a charge upon the land. But when the benefit ceases to be an equivalent for the assessment, it becomes *pro tanto* a taking of private property for public use without just compensation and therefore unconstitutional. To justify the levy of a special assessment, there must be an improvement. A mere change from one condition which is sufficient to the needs of the locality is not necessarily an improvement."

25 R. C. L., p. 142, holds:

"Under the theory that the right to impose special assessments is based upon a presumed equivalent, while it by no means follows that there must be, in fact, such full equivalent in every instance, or that its absence will render the assessment void, it has frequently been held that an assessment against private property to meet the cost of a public improvement is invalid when in substantial excess of the benefits derived by the property, and is, to such excess, a taking of private property for public use without just compensation."

In 28 L. R. A. (N. S.), p. 1162, under the "Rule of Benefits," it is stated that:

"A statute relating to special assessments for street improvements, which requires a city council to ascertain the cost of an improvement, and what portion of such cost shall be assessed on adjoining property, and to assess such portion upon such property as provided by law or ordinance of such city, does not require an assessment of the total cost to be made upon abutting property by the front-foot rule, but empowers the city council to lay the assessment solely with reference to the benefit to the property taxed from the improvement, and is therefore

open to no constitutional objection. *Burlington Sav. Bank* v. *Clinton* [C. C.], 106 F. 269.''

At page 1163 it is stated: ''When the legislature, by general or special statute, or in a municipal charter, commands assessments upon property to pay for local improvements to be laid in proportion to the benefits they confer upon the property charged, all such assessments imposed without regard to benefits, arbitrarily, according to the front-foot rule are invalid and void. *Clapp* v. *Hartford,* 35 Conn. 66; *St. John* v. *East St. Louis,* 50 Ill. 92; *Crawfordsville Music Hall Ass'n* v. *Clements,* 12 Ind. App. 464, 39 N. E. 540, 40 N. E. 752; *Des Moines Union R. R. Co.* v. *Des Moines,* 140 Iowa, 218, 118 N. W. 293; *State, Malone, Prosecutor,* v. *Jersey City,* 28 N. J. Law, 500; *State, Ogden, Prosecutor,* v. *Hudson,* 29 N. J. Law, 104; *State, Zabriskie, Prosecutor,* v. *Hudson,* 29 N. J. Law, 115; *State* v. *Hudson,* 29 N. J. Law, 117; *State, Speer, Prosecutor,* v. *Passaic,* 38 N. J. Law, 168; *State, New Brunswick Rubber Co., Prosecutor,* v. *Street and Sewers Commissioners,* 38 N. J. Law, 190, 20 Am. Rep. 380; *In re Klock,* 30 App. Div. 24, 51 N. Y. S. 897; *Chamberlain* v. *Cleveland,* 34 Ohio St. 551; *Harrisburg* v. *Adams,* 5 Pa. Dist. R. 379; *Fraser* v. *Pittsburgh,* 41 Pa. Super. Ct. 103; *State ex rel. Moore* v. *Ashland,* 88 Wis. 599, 60 N. W. 1001.''

See, also, the authorities collected in case note in L. R. A. 1917D, p. 372, when, in opening, it is said:

''The principle is quite uniformly recognized that special assessments rest upon a corresponding benefit to the property upon which the assessment is laid. It is also recognized that there can be no exact determination of the benefit which will accrue to property from a public improvement; that is a matter that at best can only be approximated. Various systems of fixing assessments have been devised, among which is that of fixing them according to the frontage of the property upon the improvement, commonly known as the 'front-foot rule.' This rule has received an exhaustive discussion in the note to *Chi-*

*cago, M. & St. P. R. R. Co.* v. *Janesville,* 28 L. R. A. (N. S.) 1124 et seq.''

In *Macon* v. *Patty,* 57 Miss. 378, 34 Am. Rep. 451, the authorities up to that time were reviewed in an elaborate opinion by Chief Justice GEORGE, and the array of authorities show that the courts generally recognized the rule that special assessments cannot be arbitrarily levied and when they exceed the benefits conferred they are unconsitutional. It would seem there could be no doubt of this principle when the source of the basis of making such assessment is planted upon the theory of special benefits to the property assessed. The assessment so made is distinct from taxation in general circumstances. There has been much confusion in the books about where the power originated, and from what power of government it was traceable. As shown in the opinion of Judge GEORGE, the doctrine crept into the American states without notice, because the instances were generally in the beginning so reasonable in their dealings that the courts paid no attention to them. In truth, it proceeded from despotism where citizens' rights are all subordinated to governmental power. In this opinion of Judge GEORGE, at page 385 (34 Am. Rep. 451), in discussing this power, the court said:

''But, while these assessments are made under the taxing power, a very wide distinction has been taken between them and taxes for general purposes. On account of this essential difference, the courts have been enabled to reach the conclusion above referred to, that local assessments are not within the terms of constitutional restrictions on the subject of taxation. And this difference is even more clearly recognized in numerous cases which hold that statutory exemptions from taxation do not include exemptions from local assessments.''

On page 386 (34 Am. Rep. 451), of this report, it is said: ''A local assessment can only be levied on land; it cannot, as a tax can, be made a personal liability of the

taxpayer; it is an assessment on the thing supposed to be benefited.''

At page 387 (34 Am. Rep. 451), the court said: ''It is unlike a tax in that the proceeds of the assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived must inure to the property upon which it is imposed, or else the courts will interfere to prevent its enforcement. *Hammett* v. *Philadelphia,* 65 Penn. St. 146, 3 Am. Rep. 615. The courts will also interfere to prevent an excessive rate, beyond the cost of the improvement. It is also within the power of the courts to judge whether the object for which it is made is public, and also whether it is so exclusively public as to prevent its imposition on a particular locality.''

In case note to *Wilson* v. *Trenton,* 61 N. J. Law, 599, 40 A. 575, 44 L. R. A. 540, 68 Am. St. Rep. 716, it is said:

''The principal case incidentally affirms a principle of very great importance, which has recently been emphasized and applied by the supreme court of the United States. It is thus: That it is not within the power of a municipality or of a state to impose upon real property any burden or liability for the construction of public improvements adjacent thereto in excess of the benefit thereby added to, or conferred upon, such property. This question may be presented in two phases—a public street may be improved at very great cost, which is sought to be assessed against the property abutting thereon, irrespective of the benefits conferred, or, though it is not claimed that the benefits resulting from the public work are less than the costs thereof, it may be insisted that, as to some parcel of land affected by the work, it has in some mode been charged with more than its just share of the benefits accruing to it. In view of what is said in the principal case and in other decisions in the same and in other states, it must be accepted as settled that there is no right or power to impose upon property the whole cost of any public improvement, unless it further appears that such property has been to that extent benefited.

*Thomas* v. *Gain,* 35 Mich. 155, 24 Am. Rep. 535; *Bogert* v. *Elizabeth,* 27 N. J. Eq. 568; *Hammett* v. *Philadelphia,* 65 Pa. 146, 3 Am. Rep. 615; *Barnes* v. *Dyer,* 56 Vt. 469. In many of the states statutes have been enacted authorizing the opening or improving of public streets and the assessment of the cost thereof against the real property abutting thereon without taking into consideration whether the property was benefited to the extent of the cost, · and also without considering the special benefit to each parcel, and on the assumption that all the land was equally benefited, directing an assessment upon each tract in proportion to its frontage upon the street opened or improved. It appears to us that these statutes cannot be sustained, and that, whenever an assessment is made thereunder the property owner may avoid it by showing that his property has not been benefited to the amount assessed against it.''

In *Norwood* v. *Baker,* 172 U. S. 298, 19 S. Ct. 187, 43 L. Ed. 443, the supreme court of the United States had before it this question as to whether or not assessments exceeded the benefits, and could be collected under a special assessment system, and the third headnote to the case holds that:

''A special assessment upon abutting property by the front foot, without taking special benefits into account, for the entire cost and expense of opening a street, including, not only the amount to be paid for the land, but the cost and expense of the proceedings, is a taking of private property for public use without compensation.''
*Mobile County* v. *Kimball,* 102 U. S. 691, 26 L. Ed. 238; *Illinois Central R. R. Co.* v. *Decatur,* 147 U. S. 190, 13 S. Ct. 293, 37 L. Ed. 132; *Bauman* v. *Ross,* 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270, and authorities there cited.

According to the weight of judicial authorities, the legislature has a large discretion in defining the territory to be deemed specially benefited by a public improvement and which may be subjected to special assessment to meet the cost of such improvements. In *Williams* v. *Eggles-*

*ton,* 170 U. S. 304, 311, 18 S. Ct. 617, 42 L. Ed. 1047, where the only question, as this court stated, was as to the power of the legislature to cast the burden of a public improvement upon certain towns which had been judicially determined to be towns benefited by such improvement, it was said:

"Neither can it be doubted that, if the state Constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement."

In *Norwood* v. *Baker,* 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, the court said:

"But the power of the legislature in these matters is not unlimited. There is a point beyond which the legislative department even when exerting the power of taxation may go consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established as a rule of constitutional law that the imposition by the legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvements, could not be questioned by him in the courts of this country. It is one thing for the legislature to prescribe it as a general rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as an absolute rule that such property, whether it is, in fact, benefited or not by the opening of the street,

may be assessed by the front foot for a fixed sum representing the whole cost of the improvement, and without any right in the property owner to show, when an assessment of that kind is made, or is about to be made, that the sum fixed is in excess of the benefits received. In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable and, for that reason, the excess of cost over special benefits unless it be of a material character, ought not to be regarded by a court of equity, when its aid is invoked to restrain the enforcement of a special assessment.''

It is true that the language quoted has been modified in subsequent cases cited by the supreme court, but the court has not departed from the rule that assessments made without compensation, or corresponding benefits, amount to an arbitrary taking of property and are unconstitutional.

In *Gast Realty Co.* v. *Schneider Granite Co.,* 240 U. S. 55, 36 S. Ct. 254, 60 L. Ed. 523, the court had under consideration the validity of a municipal ordinance creating a taxing district in which, under the city's charter, three-fourths of the cost of paving a street was to be assessed according to the area, and established a boundary line that, after running for some distance on a line not one hundred feet back from the street, jumped to nearly five hundred feet, when it encountered an undivided tract, and that on the opposite side of the street was one hundred fifty feet and two hundred forty feet away, and the court held that it violated the Fourteenth Amendment to the Constitution of the United States, where such differences are not based upon any consideration of difference in benefits conferred, but were established mechanically, in obedience to the *criteria* that the charter directed to be

applied. At page 525 of the Lawyers' Edition (240 U. S. 58, 36 S. Ct. 255), the court said:

"The legislature may create taxing districts to meet the expense of local improvements, and may fix the basis of taxation without encountering the Fourteenth Amendment unless its action is palpably arbitrary or a plain abuse.. [Citing authorities.] The front-foot rule has been sanctioned for the cost of paving a street. In such a case it is not likely that the cost will exceed the benefit, and the law does not attempt an imaginary exactness, or go beyond the reasonable probabilities. [Citing authorities.] . . . The differences were not based upon any consideration of difference in the benefits conferred, but were established mechanically in obedience to the criteria that the charter directed to be applied. The defendants' case is not an incidental result of a rule that, as a whole and on the average, may be expected to work well, but of an ordinance that is a farrago of irrational irregularities throughout. It is enough to say that the ordinance following the orders of the charter is bad upon its face as distributing a local tax in grossly unequal proportions, not because of special considerations applicable to the parcels taxed, but in blind obedience to a rule that requires the result."

In *Myles Salt Co.* v. *Drainage Commissioners,* 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190, it was held that an island, being high land, is not and cannot be directly benefited by a drainage improvement, and may not consistently with the Fourteenth Amendment to the Federal Constitution be included within said drainage district solely for the purpose of deriving revenue from said levy and collection of drainage taxes thereon for the benefit of other lands subject to be improved by drainage. At page 484 (36 S. Ct. 206), the court said:

"But notwithstanding the studied effort so made and declared, defendants contend that plaintiff missed its purpose and that a Federal question was neither presented to the courts below nor decided by them, and a

motion is made to dismiss. It is said that 'under the law of Louisiana the action of the legislative body (the police jury), in the exercise of its discretion as to what property shall be included in a drainage district, will not be inquired into by the court, except upon a special averment of fraud which is not pleaded.' And such decision, it is further contended, was a decision upon the state law and presents no federal question, the statute of the state not being attacked. We cannot concur in the contention. It is true the law of the state as written is not attacked, but the law as administered and justified by the supreme court of the state is attacked and it is asserted to be a violation of the Constitution of the United States. The question presented is Federal, and the motion to dismiss is denied. And the considerations that move a denial of the motion, move a decision of the merits of the question. . The charge is that plaintiff's property was included in the district not in the exercise of 'legal legislative discretion,' not that the scheme of drainage would inure to the benefit of the property, even indirectly, but with the predetermined 'purpose of deriving revenues to the end of granting a special benefit to the other lands subject to be improved by drainage, without any benefit' to plaintiff 'or its property whatever,' present or prospective. Nothing could be more arbitrary if drainage alone be regarded.''

The court quoted in this latter case *Norwood* v. *Baker, supra,* and approves the principle therein announced, and distinguished the case further from *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 21 S. Ct. 625, 45 L. Ed. 879, and further said:

''It is to be remembered that a drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. *Philip Wagner* v. *Leser, supra.* We are not

dealing with motives alone, but as well with their result-ant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property, but solely of the improvement of the property of others—power, there-fore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind.''

See, also, *Martin* v. *District of Columbia,* 205 U. S. 135, 27 S. Ct. 440, 51 L. Ed. 743; *Kansas City Southern R. Co.* v. *Road Imp. Dist. No. 6 of Little River County, Ark.,* 256 U. S. 658, 41 S. Ct. 604, 65 L. Ed. 1151; *Kansas City Southern R. Co.* v. *Road Imp. Dist. No. 3 of Sevier Coun-ty, Ark.,* 266 U. S. 379, 45 S. Ct. 136, 69 L. Ed. 335, where the same principles are recognized.

Section 24 of the Constitution of Mississippi provides that: "All courts shall be open; and every person for an injury done him in his lands, goods, person, or repu-tation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.''

This section of our Constitution has received little consideration in our courts, but in other states similar provisions have been construed in a very comprehensive manner, as preserving all rights of citizens to the protec-tion of the common law, and it is not within the power of the legislature to prevent any citizen from resorting to the courts to protect his property from confiscation. The various authorities upon this subject may be found col-lected in Century Digest, title Constitutional Law, sec-tions 950-953, and Decennial Digest, title ''Constitutional Law,'' sections 321-329.

In *Getzen* v. *Sumter County,* the supreme court of Flor-ida in 89 Fla. 45, 103 So. 104 said: ''An abuse or an ar-bitrary or unreasonable exercise of a power conferred by law, is not within the intendments of the law, organic or statutory, and the Constitution requires the courts to give a 'remedy' 'for an injury done' to personal or

property rights, which includes an injury caused by an arbitrary or an unreasonable exercise of authority conferred, as well as by action taken without any authority whatever. . . . The Constitution vests 'the judicial power of the state' in designated courts, each having jurisdiction of defined classes of cases. The judicial power of the state vested in the courts includes authority in adjudicating litigated rights to determine what is the controlling law applicable to the rights being adjudged. This power is the means provided by the Constitution for authoritatively determining in litigated cases the meaning and intent of pertinent provisions of the Constitution. . . . Therefore it is the duty of the courts, by due course of law, to give a remedy 'for any injury done,' to any one in 'protecting property' or in 'obtaining safety,' from any unlawful or oppressive action by any governmental department, tribunal or officer in performing any function under a form or a claim of lawful authority. . . . An abuse, or an arbitrary or unreasonable exercise of a power conferred by law, is not within the intendments of the law, organic or statutory, and the Constitution requires the courts to give a 'remedy' 'for any injury done' to personal and property rights, which includes an injury caused by an arbitrary or an unreasonable exercise of authority conferred, as well as by action taken without any authority whatever."

See *Salt Creek Val. Turnpike Co.* v. *Parks,* 50 Ohio St. 568, 35 N. E. 304, 28 L. R. A. 769; *City of Janesville* v. *Carpenter,* 77 Wis. 288, 46 N. W. 128, 8 L. R. A. 808, 20 Am. St. Rep. 123; *Merchants' Bank* v. *Ballou,* 98 Va. 112, 32 S. E. 481, 44 L. R. A. 306, 81 Am. St. Rep. 715; *Wilson* v. *Simon,* 91 Md. 1, 45 A. 1022, 80 Am. St. Rep. 427; *Gray* v. *Building Trades Council,* 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. Rep. 477, 1 Ann. Cas. 172.

There is another proposition about the statute that seems to endanger its constitutionality, and that is the provision in section 4 that gives a majority of the prop-

erty owners actually residing on the property owned by them and included within the district created and ordered to be especially assessed protection and denying the same protection to those property owners not residing thereon, and the right to file protests and absolutely stop the making of the improvements is also given such residents. This section takes entirely from the city authorities the discretion to proceed with the work if such residents actually occupying the property protest. As illustrating this taking from the authorities the discretion of creating a taxing district, see *Browning* v. *Hooper*, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330.

It further appears to deny the other owners of property not occupying said property to be improved the equal protection of the law, in that it effectually denies them the same right to protest that it gives to owners actually occupying the land to be improved. This seems to me to be an unreasonable classification. The assessments are to be made upon the theory that the property is benefited, and the fact that the person lives on or occupies it actually would have no reasonable relation to the construction of the improvement, or abandoning it, while the person who does not live upon the property abutting the proposed improvement may protest, but his protest will have no effect whatever if the city authorities disagree with him. But the other owners, in the same situation, so far as benefits are concerned, are given the absolute power to stop the improvement. In other words, it places within the power of one class the right to stop the improvements, regardless of whether or not the city authorities desire it, and denies equal rights to another class, living in the same city, but not actually occupying the property to be improved, although they may own it. I can see no relation between the privilege conferred on the resident owner and denied the nonresident owner. This question was not argued, but lies in the face of the proceeding and seems to be controlling in its efficacy. In other words, occupying the property, in certain contin-

gencies, controls absolutely the making of improvements thereon. This was demonstrated in the case of *Browning* v. *Hooper, supra,* under the Texas statute, which was condemned.

M°GOWEN, J., concurs.