J. C. GETZEN et al., *Appellants*, v. SUMTER COUNTY, FLOR-IDA, *Appellee.*

En Banc.

Opinion Filed February 2, 1925.

1. The intent of the Constitution is that the taxing power shall be exercised only as authorized by controlling law for an appropriate public purpose, and only to the extent that a proper public purpose may be accomplished without violating property rights of the taxpayers.

2. An abuse or an arbitrary or unreasonable exercise of a power conferred by law, is not within the intendments of the law, organic or statutory; and the Constitution requires the courts to give a "remedy" "for any injury done" to personal or property rights, which includes an injury caused by an arbitrary or an unreasonable exercise of authority conferred, as well as by action taken without any authority whatever.

3. The right to exercise the power of taxation is limited. to appropriate public purposes, and, when not controlled by a prescribed rule, the nature and extent of a tax levy, or of any action taken involving or necessitating a tax levy, should be determined by a due consideration of controlling provisions and principles of law and of the organic property rights of

the taxpayers as well as of the reasonable requirements of the public welfare.

4. The organic rights to protect property and to obtain redress for injuries are secured against abuses in the exercises of authority involving tax levies by administrative officers as well as against abuse by the legislature.

5. The intent of organic or statutory provisions is the essence of the law and such intent may be shown by the implications and intendments as well as by the words of express provisions; and implied provisions of organic or statutory law are as effective as the express provisions, when such implied provisions are judicially declared to exist.

6. In providing that the county commissioners "shall determine" "what amount of bonds is required" for an authorized county purpose, the intent of the statute is that such determination shall be controlled by applicable provisions and principles of law, so that the action taken shall not be arbitrary, but shall be reasonable as it affects property rights secured by the Constitution.

7. Action taken by administrative officers must be both legal and reasonable, and such action is subject to judicial review. This is particularly so where the authority to act is conferred in general terms.

8. Action taken pursuant to a statute must accord with the provisions of the statute, and must not conflict with the requirements of organic law.

9. The intent of a statute is the gist of the enactment, and a material disregard of the statutory intent is a violation of the substance of the enactment.

10. Where a statute merely authorizes an administrative function to be performed by officials, the statutory intent should be observed in substance, and the legality and reasonableness of the action taken under the statute are subject to judicial review.

11. A statute does not contemplate an unreasonable exercise of authority conferred by it, particularly when the taxing power and material property and personal rights are involved.

12. While the statute authorizes the county commissioners to "determine" "what amount of bonds is required" for a county purpose, and does not expressly limit the amount of bonds that may be issued by a county for any or all county purposes, yet the statute by necessary intendment does not authorize the issue of an amount of county bonds that would be unreasonable with reference to the organic property rights of taxpayers and to the just requirements of the public purpose contemplated.

13. The right of a taxpayer to relief in the courts from an anticipated injury to his organic property rights by an unreasonable exercise of the taxing power given for a public purpose is not affected, even though the exercise of the power within reasonable limitations would afford no justiciable rights to a taxpayer, and even though the action taken has been approved by a majority of the electorate.

14. Large areas, small population and low valuations may warrant a policy of liberal bond issues for constructing hard surface roads as essential in developing the varied and extensive resources of a county, but such conditions and policy will not justify an excessive bond issue involving an abuse of the taxing power, even though the bond issue be approved by a majority of the electorate; for the minority have rights secured to them by the Constitution and by the intendments of the statutes authorizing bond issues.

15. The Constitution does not contemplate or permit an abuse of the taxing power, and the intent of the statute, which is the essence of the law, is that bonds shall be issued only in such amounts as the public purpose reasonably requires with due regard to the organic rights of taxpayers to protect their property from any arbitrary and unreasonable exercise of governmental authority.

16. In reviewing the administrative discretion of offiicals, the court should give due consideration to the matters that were or should have been considered by the officials in exercising the discretionary authority that is being reviewed.

17. As the law prescribes no definite limit to the amount of bonds a county may issue, and as the needs and demands of the people of a county and other conditions and circumstances and the reasonable anticipations based on facts and experience and not on mere conjecture, that should have guided the county commissioners in determining the "amount of bonds" that it is "expedient or to the best interests of the county" to issue for the designated purpose, may reasonably justify the proposed bond issue, it is, *on the showing made*, as to abuse of discretion by the county commissioners, not clear to this court, as against the decree made by the resident Circuit Judge, that the county commissioners committed an abuse of authority and discretion in fixing the amount of this bond issue which has been approved by a majority of the freeholder electors of the county.

18. Chapter 9174, Acts of 1923, authorizing a county tax levy for roads, and Section 1543, Revised General Statutes of 1920. requiring the county commissioners to levy a sufficient tax for interest and sinking fund of county bonds, may operate together in a county.

19. Where no illegality or abuse of authority is shown in issuing bonds, the statutory authority to levy a tax sufficient to meet the interest and principal of the bonds is controlling.

An Appeal from the Circuit Court for Sumter County; J. C. B. Koonce, Judge.

Affirmed.

*James F. Glen* and *Louis W. Duval*, for Appellants;

*J. T. McCollum*, for Appellee.

WHITFIELD, J.—In proceedings brought under the statute for that purpose, (Sec. 3296 *et seq.*, Rev. Gen. Stats. 1920) the Circuit Court by decree validated a proposed issue of county bonds by the County Commissioners of Sumter County, for constructing hard surfaced highways in the county. Sec. 1531 *et seq.*, Rev. Gen. Stats. 1920.

An appeal was taken by intervening taxpayers as allowed by the statute, and one of the contentions made here is that the county commissioners abused the authority to issue bonds conferred upon them by the statute, in that the amount of the bond issue, taken with the present bonded debt of the county, is so far in excess of a reasonable percentage of the valuation of the taxable property as to in effect be an oppressive and unlawful exercise of the authority conferred by the statute and a violation of organic property rights secured by the Constitution in an attempted exercise of the taxing power of the State.

In order that the State government may be one of legal regulations lawfully administered, the Constitution provides for a law enacting power, a law executing power and also for a law interpreting power, *i. e.*, the judicial power.

The Constitution vests "the judicial power of the State" in designated courts, each having jurisdiction of defined classes of cases. The judicial power of the State vested in the courts includes authority, in adjudicating litigated rights, to determine what is the controlling law applicable to the rights being adjudged. This power is the means provided by the Constitution for authoritatively determining in litigated cases the meaning and intent of pertinent provisions of the Constitution itself as well as whether other State laws and regulations accord with the Constitution, and whether executive or administrative action taken under a statute affecting the litigated rights, accords with the Constitution and with the intent of the

statute, so that the court may give appropriate effect to the applicable governing law in adjudicating rights.

The organic rights "of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety," are subject to the lawful and reasonable exercise of the sovereign powers of the State to conserve the general welfare; but the Constitution contains provisions that are designed to protect such rights from unlawful and oppressive governmental action. The organic division of governmental powers into departments with limitations upon each, and the provisions securing personal and property rights and the organic rights to due process and equal protection of the law, to just compensation for property taken under the power of eminent domain for public purposes, the limitations confining the taxing power to appropriate public purposes, together with the provision that "all men are equal before the law," and the requirement that the courts of the State "shall be open so that every person" "shall have remedy, by due course of law," "for any injury done him," and that "right and justice shall be administered without sale, denial or delay," and other safeguards contained in the Constitution, are designed to protect individuals in their personal and property rights from an abuse of any governmental power or authority. Conservation of the rights of the people in the interest of the general welfare, is the primary and supreme purpose of the Constitution.

The Constitution vests "the judicial power of the State" in the courts and mandatorily requires the courts to afford a "remedy, by due course of law," to "every person for any injury done him;" therefore, it is the duty of the courts, *by due course of law,* to give a remedy "for any injury done" to any one in "protecting property" or in "obtaining safety," from any unlawful or oppressive action by any governmental department, tribunal or officer

in performing any function under a form or a claim of lawful authority.

As shown by the organic provisions limiting the power to tax, securing property rights and requiring the courts to give appropriate remedies "for any injury done," to property rights, the intent of the Constitution is that the taxing power shall be exercised only as authorized by controlling law for an appropriate purpose, and only to the extent that a proper public purpose may be accomplished without violating property rights of the taxpayers; and that the courts of the State shall, by due course of law, afford a "remedy" "for any injury" to personal or property rights by any unauthorized or arbitrary or unreasonable exercise of governmental authority.    See Paul Bros. v. Long Branch and Lakeside Special Road and Bridge Dist., 83 Fla. 706, 92 South. Rep. 687; Willis v. Special Road & Bridge Dist. No. 2, Osceola County, 73 Fla. 446, 74 South. Rep. 495.

An abuse or an arbitrary or unreasonable exercise of a power conferred by law, is not within the intendments of the law, organic or statutory; and the Constitution requires the courts to give a "remedy" "for any injury done" to personal and property rights, which includes an injury caused by an arbitrary or an unreasonable exercise of authority conferred, as well as by action taken without any authority whatever.

The right to exercise the power of taxation is limited to appropriate public purposes, and, when not controlled by a prescribed rule, the nature and extent of a tax levy, or of any action taken involving or necessitating a tax levy, should be determined by a due consideration of controlling provisions and principles of law and of the organic property rights of the taxpayers as well as the reasonable requirements of the public welfare.

The organic rights to protect property and to obtain redress for injuries are secured against abuse in the exercise of authority involving tax levies by administrative officers. (Willis v. Special Road & Bridge Dist. No. 2, Osceola County, 73 Fla. 446, 74 South. Rep. 495; Antuono v. City of Tampa, 87 Fla. 82, 99 South. Rep. 324), as well as against abuse by the legislature, (Paul Bros. v. Long Branch and Lakeside Special Road and Bridge Dist., 83 Fla. 706, 92 South. Rep. 687; Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 South. Rep. 280).

The statute provides that "whenever the board of county commissioners of any county shall deem it expedient, or to the best interests of such county, to issue the county bonds of their county, for the purpose of constructing paved, macadamized or other hard-surfaced highways, or erecting a court house or jail, or other public buildings, and funding the outstanding indebtedness of the county, or for any of such purposes, they shall determine by resolution to be entered in their records, what amount of bonds is required for such purpose, the rate of interest to be paid thereon, and the time when the principal and interest of such bonds shall be due and when payable." Sec. 1531, Rev. Gen. Stats. 1920.

The intent of organic or statutory provisions is the essence of the law (State ex rel. Johnson v. Patterson, 67 Fla. 499, 65 South. Rep. 659; State ex rel. Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367; State ex rel. West v. Hilburn, 70 Fla. 55, 69 South. Rep. 784; Ogden v. Saunders, 12 Wheat. (U. S.) 213, text 232), and such intent may be shown by the implication and intendments as well as by the words of express provisions; and implied provisions of organic or statutory law are as effective as the express provisions, when such implied provisions are judicially declared to exist. 12 C. J. 699, 719. State ex rel. v. Greer, decided at this term.

In providing that the county commissioners "shall de-. termine" "what amount of bonds is required" for an authorized county purpose, the intent of the statute is that such determination shall be controlled by applicable provisions and principles of law, so that the action taken shall not be arbitrary, but shall be reasonable as it affects property rights secured by the Constitution. This principle is expressly recognized in State *ex rel.* Young v. Duval County, 76 Fla. 180, text 191, 79 South. Rep. 692.

Action taken by administrative officers must be both legal and reasonable, and such action is subject to judicial review. This is particularly so where the authority to act is conferred in general terms. See Antuono v. City of Tampa, 87 Fla. 82, 99 South. Rep. 324; Cary v. Ellis, 78 Fla. 186, 82 South. Rep. 781.

Action taken pursuant to a statute must accord with the provisions of the statute, and must not conflict with the requirements of organic law. The intent of a statute is the gist of the enactment, and a material disregard of the statutory intent is a violation of the substance of the enactment. Where a statute merely authorizes an administrative function to be performed by officials, the statutory intent should be observed in substance, and the legality and reasonableness of the action taken under the statute are subject to judicial review. A statute does not contemplate an unreasonable exercise of authority conferred by it, particularly when the taxing power and material property and personal rights are involved. Willis v. Special Road & Bridge Dist. No. 2, Osceola County, 73 Fla. 446, 74 South. Rep. 495.

While the General Statutes of the State limit municipal bond issues "to an amount not exceeding ten per cent of the assessed value of the real and personal property within its corporate limits," (Sec. 1901, Rev. Gen. Stats. 1920; Smith v. Milton, 61 Fla. 745, 54 South. Rep. 719), there is

no such express limitation as to counties. Some special or local laws authorize particular municipalities to issue bonds not in excess of twenty-five per cent of the assessed value of the property in each municipality. See Chapter 9693, Acts of 1923. The valuations for municipal taxes are usually much higher than valuations for State and county taxation. It appears that the amount of bonds proposed to be issued, added to the amount of bonds already outstanding against the county would make an amount of bonded indebtedness of the county of a fraction more than forty per cent of the amount of the total assessed value of the property in the county for State and county taxes for the year 1923.

While the statute authorizes the county commissioners to "determine" "what amount of bonds is required" for the county purpose, and does not expressly limit the amount of bonds that may be issued by a county for any or all county purposes, yet the statute by necessary intendment does not authorize the issue of an amount of county bonds that would be unreasonable with reference to the organic property rights of taxpayers and to the just requirements of the public purpose contemplated.

The right of a taxpayer to relief in the courts from an anticipated injury to his organic property rights by an unreasonable exercise of the taxing power given for a public purpose is not affected, even though the exercise of the power within reasonable limitations would afford no justiciable rights to a taxpayer, and even though the action taken has been approved by a majority of the electorate.

Large areas, small population and low valuations may warrant a policy of liberal bond issues for constructing hard surface roads as essential in developing the varied and extensive resources of the county, but such conditions and policy will not justify an excessive bond issue involving an abuse of the taxing power, even though the bond

issue be approved by a majority of the electorate; for the minority have rights secured to them by the Constitution and by the intendments of the statutes authorizing bond issues. The Constitution does not contemplate or permit an abuse of the taxing power, and the intent of the statute, which is the essence of the law, is that bonds shall be issued only in such amounts as the public purpose reasonably requires with due regard to the organic rights of taxpayers to protect their property from any arbitrary and unreasonable exercise of governmental authority.

In reviewing the administrative discretion of officials, the court should give due consideration to the matters that were or should have been considered by the officials in exercising the discretionary authority that is being reviewed.

In exercising their statutory authority to "determine by resolution  *  what amount of bonds is required for" the authorized purpose, the county commissioners doubtless considered all matters that were pertinent to the decision. Among such matters are the pressing needs of the people of the county for hard surfaced roads, the low tax assessment valutaions of the property (not over thirty per cent) in the county, the steady and rapid increase in the real values of property in that section of the State, the county's large territory with relatively small population and great undeveloped resources, the reasonable probabilities that good roads would induce desirable immigration and greatly facilitate and enhance taxable values in the county, the prompt and sufficient payment of taxes to pay interest and to redeem the serial bonds outstanding, the substantial reductions being made of the bonded debt of the county, the public demand for good roads and the willingness of the freeholder electors to incur the indebtedness as confirmed by the majority vote authorizing the bond issue. These and other relevant matters were peculiarly within the knowledge of the county commissioners and it was their province

to consider them in determining the "amount of bonds re-
quired" for the particular county purpose.

As the law prescribes no definite limit to the amount of
bonds a county may issue, and as the needs and demands
of the people of the county and other conditions and cir-
cumstances and the reasonable anticipations based on facts
and experience and not on mere conjecture, (K. C. S. Ry.
v. Road Imp. Dist., U. S., 45 Sup. Ct. Rep. 136, de-
cided December 15, 1924) that should have guided the
county commissioners in determining the "amount of
bonds" that it is "expedient or to the best interests of the
county" to issue for the designated purpose, may reason-
ably justify the proposed bond issue, it is, on the showing
made, as to abuse of discretion by the county commission-
ers, not clear to this court, as against the decree made by
the resident Circuit Judge, that the county commissioners
committed an abuse of authority and discretion in fixing
the amount of this bond issue which has been approved by
a majority of the freeholder electors of the county.

Chapter 9174, Acts of 1923, authorizes each of the sev-
eral counties "to levy a tax not to exceed eight mills for
the purpose of constructing, reconstructing, working and
repairing the roads, bridges and ferries in such county."
Section 1543, Revised General Statutes, provides that
"when any county bonds shall have been issued in pursu-
ance of this article, it shall be the duty of the county com-
missioners, to levy annually by tax upon the taxable prop-
erty in the county a sum sufficient to pay the interest of
said bonds, and also a sum sufficient to meet the amount
annually required to be raised as a sinking fund to meet
the principal of the bonds, which sinking fund shall be pro-
vided for by resolution of the board of county commission-
ers before the issuing of any of said bonds."

These two statutes may operate together in a county.
See State v. Gadsden County, 63 Fla. 620, 58 South. Rep.

232. The latter statute expressly requires the levy of a tax in "a sum sufficient" for the interest and for "a sinking fund to meet the principal of the bonds." Where no illegality or abuse of authority is shown in issuing the bonds, the statutory authority to levy a tax sufficient to meet the interest and principal of the bonds is controlling.

Sections 3296, 3297 and 3298, Revised General Statutes, have been heretofore recognized as valid, and no specific objection is made to them here.

The decree of the Circuit Judge validated the bonds "whether bearing interest at the rate of six per cent per annum or at a lower rate." The proceedings provided for bonds bearing six per cent interest per annum, but if the bonds can be sold as contemplated by law at a lower rate of interest, there appears to be no legal objection to the lower rate.

Affirmed.

TAYLOR, C. J., AND BROWNE AND TERRELL, J. J., concur.

TERRELL, J., concurring.

The Circuit Court entered a decree validating $650,000 of road bonds of Sumter County, authorized pursuant to Section 1531 et seq. Revised General Statutes of Florida.

Section 1901 Revised General Statutes of Florida by its terms limits municipal bond issues to ten per cent of the assessed value of the real and personal property within the municipality, but this is an old statute and of little practical effect because so many municipalities have since its enactment been lifted from its provisions by Special Charter Acts of the Legislature. In such Special Charter Acts twenty and twenty-five per cent of the tax levy for general purposes are the most popular debt limitations. In addition to the authority so given for general pur-

poses, authority is given to borrow and bond for specific purposes, so for all practical purposes there is no uniform limit to the amount in which municipalities in this State may become involved. Chapters 8920, 9015, 9021 and 8927, Acts of 1923, may be referred to as some of the many recent city charters in point.

In this connection it is proper to state that these same charter acts authorize the municipalities to assess the property within their limits irrespective of the assessments for State and county purposes. It is matter of common knowledge that the result of such authorization is that identical property within such municipalities is assessed on the books two or three times as high for municipal purposes as it is for State and county purposes. If the municipal limitation is to be a guide for the county limitation, a debt of twenty or twenty-five per cent. for general municipal purposes would therefore be equivalent to one of forty or fifty per cent. for county purposes as assessments now run in the great majority of our municipalities.

Charter limitations for general municipal purposes as above are also in harmony with the amendment to Section 17 of Article 12 of our Constitution, adopted by the people at the November election, 1924, which fixes a bond limit in Special Tax School Districts of twenty per cent of the assessed valuation of all taxable property within such districts, the proceeds of such bonds to be used exclusively for school purposes in the district where raised.

But Section 1531, Revised General Statutes, under which the road bonds in question were issued imposes no debt limitation on counties for the purposes enumerated, hard surfaced roads being one of them. The county commissioners, when they *deem it expedient* and *to the best interests of the county* are authorized to determine by resolution the amount of bonds necessary for the purpose or purposes projected. The record shows that the county com-

missioners of Sumter County reached the conclusion that it was expedient and to the best interest of the county that the county bonds here attacked be issued for the purpose of constructing a system of hard surfaced roads in the county; that the necessary resolution was adopted and an election called and held according to law for the purpose of approving the issue of said bonds; that only freeholders as provided by Chapter 9294, Acts of 1923, were allowed to participate in said election, and that the issuance of said bonds was approved by the voters at said election by a very substantial majority.

The law authorizing the bonds here attacked vests in the board of county commissioners *when they deem it expedient or to the best interests of the county,* power to determine by resolution the amount of bonds necessary to be issued. The law in all other respects vests broad discretion in the county commissioners with reference to the issuance of such bonds. The record not only shows that in the matter of adopting the proper resolution the county commissioners exercised their discretion legally, but it shows that every foot of road to be constructed was definitely located and that the qualified elector freeholders knowing the location of such roads and the amounts to be spent on them, approved by popular vote the action of the county commissioners.

The charge against the county commissioners is acting illegally; it is not charged that they were guilty of abuse of discretion, or that extensive, remote and defenseless areas were being taxed to construct roads from which such areas would receive no benefit, or that appellants were discriminated against in the matter of locating the roads and making assessments to pay for them. I have examined the record carefully, and it appears that in all the proceedings incident to the issuance of the bonds the requirements of the law have been substantially followed. The amount of

the bonds, their purpose, denomination, rate of interest and retirement were matters vested by law solely in the discretion of the county commissioners to be determined by them for the "best interests of such county," and their determination having been approved by the qualified elector freeholders of the county at an election called and held for that purpose with full knowledge of the location of the roads to be constructed, and that by such vote their lands were thereby burdened with taxes to raise interest and sinking fund to retire said bonds, even if an abuse of discretion were charged on the showing made here, I do not think this court is authorized to substitute its judgment for that of the county commissioners so approved.

It is contended by appellants that the bonds here questioned added to those outstanding, will make an indebtedness against the county of more than forty per cent of the assessed valuation of all property in the county. The writer is authoritatively advised that the first retirement $100,000 of the bonds outstanding were retired January 1st of this year. The effect of such retirement would be to reduce the bonded debt of the county, the present bonds included, to below forty per cent of the assessed valuation. As shown by the tax records in the Comptroller's office the added millage necessary to take care of the bonds here attacked would increase the total taxes in Sumter County to an amount considerably below that now paid in many counties of the State. Under our system of assessments for State and county purposes, and as authorized for municipal purposes elsewhere discussed in this opinion, I find no merit in this contention.

This is a case in which bonds of the county are brought in question. The county commissioners determined the amount of bonds to be issued, the people to whom the county commissioners are responsible and whose obligations the bonds were, approved their (the commissioners') ac-

tion. The record shows the county to be solvent, and there is no intimation of the slightest probability that the county is now or would be embarrassed or its credit impaired in meeting interest and retirement if these bonds should be sold.

I think on the showing made the appellants have failed to make a case entitling them to relief by a court of equity, and that the decree of the chancellor validating the bonds should be affirmed.