## STATE ex rel. READ, Ins. Com'r, v. MID-WEST MUTUAL BURIAL ASS'N, Inc.

No. 26130.    March 3, 1936.

Rehearing Denied April 7, 1936.

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., Barefoot & Carmichael, and Cook & Bingaman, for plaintiff in error.

MacDonald & MacDonald, E. F. Lester, and Claud Briggs, for defendant in error.

WELCH, J. This suit, prosecuted in the name of the State Insurance Commissioner, seeks to enjoin the continued operation of the defendant, Midwest Mutual Burial Association, Inc.

The defendant is a corporation organized and existing under and by virtue of the laws of the state of Oklahoma, and issues to its members a certificate evidencing the right to burial benefits in compliance with chapter 33, S. L. 1929 (sec. 10453, O. S. 1931).

It is plaintiff's theory that defendant is

conducting "an insurance business" and that the defendant "has wholly failed and refused to comply with the laws of Oklahoma relating to insurance or to any part thereof," and should therefore be enjoined from continuing to operate. Plaintiff cites Oklahoma Southwestern Burial Ass'n v. State ex rel. Read, Ins. Com'r, 135 Okla. 151, 274 P. 642, decided early in 1929, as supporting its contention that defendant's transactions amount to "insurance business."

For some time prior to that decision it was a mooted question whether burial associations, operating as plaintiff, were or were not thereby engaging in the "insurance business." That decision analyzed the business of burial associations and held that such transactions do constitute a sort or kind of insurance business; it being there reasoned that the business of such burial associations were analogous to life insurance.

When that case was decided, the Legislature was in session and immediately enacted chapter 33, S. L. 1929 (sec. 10453, O. S. 1931), providing as follows:

"That all associations now operating or that may be hereafter organized which are nonprofit sharing in their operations and pay no fees or salaries to any of their officers and have no capital stock and pay not to exceed one hundred dollars ($100), as a burial fund to the beneficiary or beneficiaries named in the certificate issued by them or only furnish a burial outfit, and burial, the total amount of which shall not exceed one hundred dollars in value to those entitled thereto under the said certificate, and which associations do not make an assessment against their members until and unless the fund on hand derived from membership fees, or assessments, in the treasury of said association would only pay for the burial of one adult entitled to a burial by said association, shall be exempt from the operations and the effect of the insurance laws of the state of Oklahoma, and shall not be required to comply with the insurance laws of the said state; provided, that money collected by said associations shall be held as a trust fund for the benefit of the beneficiaries and that at least seventy-five per cent. of the membership fees collected from the members shall be accounted for and paid into this fund and that all of any future assessments of members shall be paid into this fund.

"That the treasurer of said association be required to file with the court clerk of the county in which the association is organized, a surety bond running in the name of the state of Oklahoma; said bond to be approved by the court clerk of such county, and to be conditioned that the funds of the association will be held and applied as a trust fund to be paid out only in accordance with the purposes of the association, which bond shall at all times be equal to the amount of the trust fund on hand in such association, and in no event to be less than one thousand dollars ($1,000)."

Prior to that time the Legislature had not dealt in any manner with this exact class of insurance business, but had enacted laws with reference to many specified classes of insurance, and several kinds of life insurance. (Sections 10454 to 10790, O. S. 1931.) It is insisted that the defendant should not be permitted to operate without complying with those former enactments.

These former enactments contain requirements that life insurance companies possess a paid-up capital of $100,000 or guaranty capital or surplus before being permitted to operate; that the reserve shall be invested as provided by the laws of the state; that in the case of mutual companies the holder of guaranty capital stock shall elect directors, and may receive dividends in the manner stated, and such stock shall be retired in the manner stated (sec. 10500, O. S. 1931). There are provisions in detail for the commissioner to make calculations of outstanding policies and liabilities of companies, valuations, dividends, and funds or assets (secs. 10501 and 10502, O. S 1931). And provisions as to premiums (10504), and as to expense of management (10506), as to salaries of corporation officers (10508), as to contents of policies (10509, 10511, 10519, 10522), as to necessity of medical examination (10520), as to loans on policies (10524), as to approval of forms of policies (10525).

It must have been the view of the Legislature that these and other general insurance laws of the state should not all be applied to burial associations operating as the defendant's business is conducted. This is clearly evidenced by the enactment of 1929, above quoted in full. But the plaintiff argues that this last enactment is unconstitutional upon three grounds:

First. That it violates section 3, article 19. That section of the Constitution is as follows:

"The revenue and tax provisions of this Constitution shall not include, but the state shall provide for the following classes of insurance organizations not conducted for profit, and insuring only their own members:

"First, farm companies insuring farm property and products thereon; second, trades insurance companies insuring the

property and interests of one line of business; third, fraternal life, health, and accident insurance in fraternal and civic orders, and in all of which the interest of the members of each respectively shall be uniform and mutual."

It seems to be plaintiff's theory that this section forbids provision for any other character of insurance organizations not conducted for profit and insuring only their own members, except the designated farm companies, trade companies and fraternals, but we do not so read the constitutional provision. The fact that the Constitution expressly demands that the named classes of insurance organizations **shall** be provided for, does not in any sense operate to **prohibit** provisions for other classes of insurance organizations. That seems clear from a deliberate reading of the constitutional provisions, and no authority is cited to the contrary. Section 36 of article 5 of the Constitution contains the provision that:

"* * * Any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

The plaintiff cites Modern Order of Praetorians v. Bloom, 69 Okla. 219, 171 P. 917. That case holds that there are certain restrictions upon a fraternal insurance organization as to its right to make further classification, but there is nothing in that opinion touching the question of the constitutional authority of the Legislature to enact legislation as to other or separate classes of insurance business.

Second. It is contended that said chapter 33 was enacted in violation of section 57, article 5, of our Constitution, as to title to the act.

The title of said chapter 33 is as follows:

"An act providing that nonprofit sharing associations that have no capital stock and pay no fees or salaries to their officers and pay not to exceed one hundred dollars, as a burial fund to the beneficiary or beneficiaries named in the certificate issued by them, or only furnish a burial outfit and burial to those entitled thereto under said certificate, and which does not make any assessment against their members until and unless the fund on hand in the treasury of the said association will only pay for the burial of one adult entitled to be buried by said association, shall be exempt from the operation and effect of the insurance laws of the state of Oklahoma; and the repeal of all acts or parts of acts in conflict therewith; and declaring an emergency."

It seems quite clear to us that the legislative purpose in enacting said chapter 33 was to exempt such burial associations from the operation and effect of the general insurance laws of the state theretofore enacted. That is the gist of the questioned enactment, and that is clearly stated in the title. In fact there is nothing else in the act, except some provision requiring burial associations to hold their money as a trust fund and to make bond for the faithful handling thereof. These latter provisions are wholly incidental to the chief legislative purpose and merely indicate that the Legislature, in exempting such associations from the minute supervision and regulation of ordinary or regular insurance companies, desired at that time to impose these regulatory provisions upon burial associations. It is plaintiff's theory that the title is insufficient because it does not specifically refer to these items of the bond and the fund. But since these provisions are incidental to the chief purpose of the act, and since the chief purpose of the act and the gist thereof is set out in the title, it is sufficient. Oklahoma Light & Power Co. v. Corporation Commission, 96 Okla. 19, 220 P. 54; Wallace v. Gassaway, 148 Okla. 265, 298 P. 867.

Third. It is asserted that said chapter 33 was enacted in violation of the provisions of section 22, article 6. That section of our Constitution is as follows:

"There is hereby established an Insurance Department, which shall be charged with the execution of all laws now in force, or which shall hereafter be passed, in relation to insurance and insurance companies doing business in the state."

Here the constitutional intent is expressed to create an Insurance Department, and to generally provide for its duties. There is nothing whatever in that section to in any manner restrict the Legislature as to what laws relating to insurance shall continue in force, or be thereafter enacted, but merely the announced intent and policy of having in this state an Insurance Department to have supervision of such insurance laws as should exist by legislative sanction. It is the theory of plaintiff that this section of the Constitution is itself a part of the insurance laws of the state, and that when chapter 33, S. L. 1929, was enacted exempting burial associations from the operation of the "insurance laws" of the state of Oklahoma, that the same was intended to exempt not only from the statutory insurance laws, but also from this section of the Constitution, and that therefore the last-mentioned enactment is invalid because the Legislature

cannot exempt from a constitutional provision. We are mindful of the fact that in general the "laws" are the statutory enactments and constitutional provisions as demonstrated by some authorities cited, and if we refer in general to the laws of the state that we sometimes have in mind the all-inclusive sense embracing both the statutes and the Constitution. But in this instance it is quite clear that the Legislature used this expression in its more restrictive sense to apply only to an exemption from legislative enactment. That expression, or wording of similar import, is used various other times in our statutes relating to insurance matters. See the following sections of O. S. 1931, to wit: 10564, 10622, 10767 and 10790.

But in each instance we have no difficulty in determining that the Legislature used such expression to refer to the statutory laws only. We, therefore, hold that the term "Insurance Laws of the State of Oklahoma," as used in chapter 33, S. L. 1929, refers to the statutory enactments and does not refer to any provision of the Constitution. If that quoted reference could be said to be ambiguous, it would still be our duty to construe it so as to give it validity, rather than to so construe it as to make it refer to the Constitution, and therefore be invalid. That is a general rule in the Constitution of enactments, and we follow it here to arrive at the true legislative intent. State Mutual Ins. Co. v. Clevenger, 17 Okla. 49, 87 P. 583; State Mut. Ins. Co. v. Roark, 17 Okla. 48, 87 P. 584; Board of Com'rs v. Alexander, 58 Okla. 128, 159 P. 311; Muse v. Harris, 122 Okla. 250, 254 P. 72; In re Initiative Petition No. 2 of Cushing, 157 Okla. 54, 10 P. (2d) 271; Ledegar v. Bockoven, 77 Okla. 58, 185 P. 1097; Board of Ed. of Oklahoma City v. Woodworth, 89 Okla. 192, 214 P. 1077.

We do not find in the enactment of said chapter 33 any intention of the Legislature to make any change in the Constitution by that legislative enactment.

Through the argument on all of these constitutional questions there runs the thought or contention that the legislative enactment here under consideration does not properly safeguard and regulate the insurance business of burial associations, and the thought or contention that this act is unwise legislation. As to that, it is enough to say that this court has neither the duty nor the authority to review the judgment of the Legislature, or to test the wisdom of legislation.

When the Legislature, acting within its authority, enacts valid legislation, it is binding on this court as well as upon others. It was evidently the conclusion of the Legislature in 1929 that chapter 33, S. L. 1929, provided for such regulation of burial associations as was then deemed desirable. If that provision has now become inadequate or does so in the future, the Legislature may correct it and may provide in more complete detail for the regulation of burial associations as it has heretofore provided for detailed supervision of the several other classes of insurance business in the states. It is undoubtedly the policy of the state that the amount and character of supervision to be exercised over various kinds of insurance business is to be fixed by the Legislature. As to existing enactments as to such matters, it is readily apparent that many requirements are not proper as to this or that kind of insurance business, and that various kinds of insurance business need special requirements which are applicable and therefore by special provision are only applied to such kinds of insurance business.

The upholding of chapter 33, S. L. 1929 (sec. 10453, O. S. 1931), is but the proper extending of such legislative policy to include this new development of that particular kind of insurance business. If such an act provides for more detailed supervision than is necessary, or fails to provide for sufficient regulation, its unconstitutionality is not thereby demonstrated. Section 36, article 5, of the Constitution contains the unambiguous provision that, "The authority of the Legislature shall extend to all rightful subjects of legislation." We must not declare an act of the Legislature to be unconstitutional unless it clearly contravenes a provision of the Constitution. Wallace v. Gassaway, supra. And we conclude that said chapter 33 does not violate either of the suggested provisions of the Constitution.

Finally it is urged that said chapter 33 does not expressly authorize the creation of such associations as the defendant. It is true that the questioned act does not in so many words authorize the organization of burial associations. But it does clearly recognize the existence of such associations, and also recognizes the fact that other such associations may be organized in keeping with general laws, both constitutional provisions and legislative acts, which authorize the chartering of corporations for legitimate business enterprises. The business of a burial association is not inherently un-

lawful and it is not so contended. It may very well be that such associations serve a most useful purpose, and properly conducted, will serve a wide need of our people. The defendant is "organized and existing under and by virtue of the laws of the state of Oklahoma," as is affirmatively shown by the record. It is of no controlling importance that the questioned act does not in exact words authorize the creation or organization of burial associations.

In the trial court these matters were fully presented by the pleadings, including the answer, setting up proper and sufficient defensive matter. The plaintiff moved for judgment on the pleadings. That motion was overruled, whereupon the plaintiff declined to plead further and elected to stand on the motion. The trial court then rendered judgment for defendant. That judgment is affirmed.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. OSBORN, V. C. J., and GIBSON, J., dissent.

OSBORN, V. C. J. (dissenting). In my opinion, chapter 33, Session Laws 1929 (section 10453, O. S. 1931), is unconstitutional. It is true that the transaction of business in the manner authorized by said chapter is not expressly prohibited by any provision of the Constitution. But when the constitutionality of a legislative act is challenged, which act is violative of the spirit and purpose of constitutional provisions, we must look beyond the mere letter of the law. The framers of the Constitution outlined and established certain definite policies regarding the various subjects treated in the Constitution. When such a policy is plain, clear, and easily determined, it is as binding on this court as a positive pronouncement of law and must be given effect. One of the subjects treated by the framers of the Constitution was that of insurance. There is no doubt that the necessity for the regulation of the insurance business was as apparent when the Constitution was framed as it is now. It was contemplated that comprehensive laws would be passed providing for such regulation, to the end that citizens of this state might be assured that contracts of insurance would be faithfully performed.

The pertinent provisions of article 6 of the Constitution are as follows:

"Section 22. There is hereby established an Insurance Department, which shall be charged with the execution of all laws now in force, or which shall hereafter be passed, in relation to insurance and insurance companies doing business in the state.

"Section 23. There shall be elected by the qualified electors of the state, at the first general election, a chief officer of said department, who shall be styled, 'The Insurance Commissioner,' whose term of office shall be four years: Provided, that the first term of the Insurance Commissioner, so elected, shall expire at the time of the expiration of the term of office of the first Governor elected. Said Insurance Commissioner shall be at least twenty-five years of age and well versed in insurance matters.

"Section 24. The Insurance Commissioner shall give bond, perform such duties, and possess such further qualifications as may be prescribed by law."

Section 3, article 19, of the Constitution is as follows:

"Section 3. The revenue and tax provisions of this Constitution shall not include, but the state shall provide for, the following classes of insurance organizations not conducted for profit, and insuring only their own members:

"First, farm companies insuring farm property and products thereon; second, trades insurance companies insuring the property and interest of one line of business; third, fraternal life, health, and accident insurance in fraternal and civic orders, and in all of which the interests of the members of each respectively shall be uniform and mutual."

From time to time various regulatory statutes were enacted which are too numerous and comprehensive to be outlined here. All of the various regulatory provisions were intended to accomplish a general purpose, that is, to prevent the solicitation of insurance business in this state by any person, firm, or association who had not first made certain provisions which guaranteed the full performance of contracts when the time came to perform.

It was no doubt contemplated that private citizens would be at great disadvantage in investigating the financial responsibility of the various concerns offering insurance contracts in this state. It was therefore made the office and duty of the state to relieve its citizens of such responsibility and to make such provisions that a certificate of authority and permission to do business in the state would be a certification that the various concerns holding such certificates of authority had complied with the various provisions of law and had been declared financially responsible. The citizens have a right to rely upon such certificate of authority.

A contract practically identical in form with the contract with which we are dealing

herein was involved in the case of Oklahoma Southwestern Burial Association v. State ex rel. Read, 135 Okla. 151, 274 P. 642. In that case an injunction was granted permanently enjoining a burial association from conducting its business for failure to comply with the insurance laws. The cause was defended on the ground that said association was not engaged in the insurance business. The court therein analyzed and discussed the authorities from the various states and he'd that said association was engaged in the insurance business and as such should comply with the insurance laws of this state. At the time the petition for rehearing in that case was overruled the Legislature was in session and promptly enacted chapter 33, Session Laws 1929.

It is noted that no provison was made in the act for a change in the form of contract; the contract is therefore still a contract of insurance.

The ultimate effect of the act was to create a new classification of insurance business. The Legislature provided in the act that an association doing such class of insurance business "shall be exempt from the operation of and the effect of the insurance laws of the state of Oklahoma, and shall not be required to comply with the insurance laws of said state." The exact question before the court is whether or not such legislation is in harmony with the Constitution.

In the case of Board of Commissioners of Logan County v. State, 122 Okla. 268, 254 P. 710, it is said:

"The affirmation of a distinct policy upon any specific point in a state Constitution implies the negation of any power in the Legislature to establish a different policy."

In the case of Amos v. Mathews, 99 Fla. 1, 126 So. 308, it is said:

"'The true spirit of constitutional interpretation * * * is to give full, liberal construction to the language, aiming ever to show fidelity to the spirit and purpose. * * * Constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation.' Fairbank v. U. S., 181 U. S. 283, 21 S. Ct. 648, 651, 45 L. Ed. 862.

"This court has held that 'the courts should not declare a statute to be void or inoperative on the ground that it is opposed to a spirit that is supposed to pervade the

Constitution.' State v. Johns, 92 Fla. 187, 109 So. 228; Cooley's Const. Lim. (7th Ed.) p. 239. But it does not necessarily follow that in every case the courts must be able to point out some express inhibition which has been disregarded, or some express command which has been disobeyed, before the courts can set aside a statute as invalid. 'The intent of organic or statutory provisions is the essence of the law * * * and such intent may be shown by the implications and intendments. as well as by words of express provisions, and implied provisions of organic or statutory law are as effective as the express provisions, when such implied provisions are judicially declared to exist.' Getzen v. Sumter County, 89 Fla. 45, 103 So. 104, 107. And in Re Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850, this court said that 'the spirit as well as the letter' of constitutional inhibitions 'should be preserved and given full force and effect.' Constitutional restraints, therefore, may be found either in the express language employed or in the purpose clearly, though impliedly, evidenced thereby. The object of constitutional construction is to ascertain and effectuate the intention and purpose of the people in adopting it. That intention and purpose is the 'spirit' of the Constitution—as obligatory as its written word. That spirit, however, cannot consist of mere sophistry nor of fanciful or conjectural theory. It must be found in those implications and intendments which clearly flow from the express mandates of the Constitution when considered in the light of circumstances and historical events leading up to its adoption, from all of which the purpose of the people in adopting it is to be gleaned. State v. Butler, 70 Fla. 102, 69 So. 771; Mugge v. Warnell, etc., Co., 58 Fla. 318, 50 So. 645; Brown v. Lakeland, 61 Fla. 508, 54 So. 716; State v. Greer, 88 Fla. 249, 102 So. 739; 37 A. L. R. 1298; Getzen v. Sumter County, 89 Fla. 45, 103 So. 104; Rathbone v. Wirth, 150 N. Y. 459, 45 N E. 15, 34 L. R. A. 408; Holland v. State, 15 Fla. 455, 523; People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103; Cooley, Const. Lim. (7th Ed.) p. 98, 242."

As I conceive it, there is a definite and well-established policy announced by the framers of the Constitution in section 22, article 6, which establishes an Insurance Department "which shall be charged with the execution of all laws now in force or which shall hereafter be passed in relation to insurance and insurance companies doing business in the state." I cannot escape the conclusion that the framers of the Constitution intended that all insurance companies doing business in this state should be on a parity so far as the law is concerned. If we uphold the validity of the above act of the Legislature and sanction the authority of the Legislature to classify the various

kinds of insurance business and to provide that certain classes are subject to the regulatory provisions of the law which are wholesome, salutary, and necessary, and exempt certain other classes from regulation, in my opinion we have broken down the structure of the law relating to regulation of the insurance business and have reached a result which is directly contrary to that contemplated by the framers of the Constitution when it was provided for the establishment of an Insurance Department and that said department was charged with the execution of all laws relating to insurance and insurance companies doing business in this state.

It is argued on behalf of defendant that the legislative act is in harmony with the constitutional provisions in that the Insurance Commissioner is still vested with full authority to execute the law as declared by the legislative act, but this argument does not give consideration to that provision which specifically exempts associations from compliance with the insurance laws of the state. The plain and obvious purpose of the act was to deprive the Insurance Commissioner of jurisdiction over such companies, since his authority relates to the enforcement of such insurance laws. They are therefore left free to transact business without supervision, inspection, or regulation. True, a bond is required equal to the amount of trust funds on hand, but no provision is made for the audit of such companies or for any other means of ascertaining whether or not they are complying with such requirement.

The Constitution makers contemplated uniform regulation of all companies engaged in the insurance business in this state. The purpose and the necessity for such regulation have been heretofore suggested. It was further provided by the Constitution that the responsibility for such regulation should be fixed upon the Insurance Commissioner. The legislative act involved herein creates a new classification of insurance business and very definitely provides for the transaction of such business without regulation. I cannot harmonize the provisions of this act with the spirit, purpose, and intent of the framers of the Constitution.

The approval of this legislative act in my opinion creates a dangerous precedent to which I cannot give my personal sanction and approval. I therefore respectfully dissent.

I am authorized to say that Mr. Justice GIBSON concurs in this dissenting view.