Herman A. Heise President Indian River Community College Fort Pierce
QUESTION:
What effect does a provision of a collective bargaining contract between a labor organization and the Indian River Community College Board of Trustees in which the parties agree to `continue in effect all practices of the college administration not covered by the terms of this contract concerning terms and conditions of employment . . . ` have upon the conclusion reached in AGO 078-12?
SUMMARY:
A provision of a collective bargaining contract between a labor organization and the Indian River Community College Board of Trustees in which the parties agree to `continue in effect all practices of the college administration not covered by the terms of this contract concerning terms and conditions of employment . . .' cannot `ratify' or otherwise validate a rule or practice of the community college board of trustees which is unauthorized by law or rule of the State Board of Education.
In AGO 078-12, I concluded that a community college district board of trustees was not authorized by law to pay the costs of employees' voluntary physical examinations. This conclusion was bottomed upon general principles of law relating to the powers and duties of public officers as well as specific statutory provisions governing the authority of community college district boards of trustees. As to the first point, AGO 078-12 noted:
 A community college district board of trustees has no inherent or common-law powers. It has only those powers which have been conferred by statutes. Cf., Buck v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959); Harvey v. Board of Public Instruction, 133 So. 868 (Fla. 1931); and AGO 075-148 holding that the powers of district school boards are limited by law, and the extent of their powers may be enlarged or modified only by the Legislature. If there are any doubts as to the exercise of authority it should not be assumed. Hopkins v. Special Road Bridge District No. 4, 74 So. 310 (Fla. 1917); Harvey v. Board of Public Instruction, supra; State v. Ausley, 156 So. 909 (Fla. 1934); State v. Culbreath, 174 So.2d 422 (Fla. 1937); Gessner v. Del-Air Corp., 17 So.2d 522
(Fla. 1944); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974); cert. dismissed, 300 So.2d 900.
See also AGO 072-319 providing that community college boards of trustees, `[a]s administrative authorities have only that authority and those duties prescribed by statute and rules, regulations or standards which may be adopted by the State Board of Education.' Cf., AGO 078-56, in part, holding that a community college district was without legislatively conferred authority to employ law enforcement officers, and also was not empowered by the Legislature to vest campus security officers employed by the district with authority to bear arms and make arrests.
As to be second point, AGO 078-12 observed that community college boards of trustees possess, `under statutes and other rules andregulations of the state board [of education] . . . all powers necessary and proper for the governance and operation of the respective community colleges.' (Emphasis supplied.) Section 230.753(2)(a), F. S. See also s. 230.768, F. S., providing, in pertinent part, that `[a]ll funds accruing to the benefit of the community college shall be . . . expended in accordance with rules and regulations of the state board.' In this regard, rules of the State Board of Education stipulate that the sole basis to be used by the board of trustees in determining the compensation of community college employees is the employees' salary schedule; any additional compensation or fringe benefits must be authorized elsewhere by statute or state board of education regulation authorized by law. See Rules 6A-14.247(5)(b), 6A-14.46, F.A.C.
However, you inquire as to whether the conclusions set forth above should be modified with respect to faculty members at Indian River Community College because of the `Past Practices' clause which has been incorporated into a collective bargaining agreement between a labor organization representing such faculty and the community college board of trustees. See s. 6, Art. I, State Const., stating, inter alia, `[t]he right of employees, by and through a labor organization to collectively bargain shall not be abridged'; and part II, Ch. 447, F. S., providing statutory implementation of s. 6, Art. I, supra, with respect to public employees. Specifically, Article V of said collective bargaining contract provides as follows:
 PAST PRACTICES — The parties agree to continue in effect all practices of the College Administration not covered by the terms of this contract concerning terms and conditions of employment (wages, salaries, hous, vacation, sick leave, academic freedom, appointment, reappointment, promotion, tenure, dismissal, termination, suspension, sabbatical leave), provided, however, that such practices are not in conflict with the provisions of this Contract. In the event of such a conflict, the terms of this Contract shall be controlling. As used in this Contract, the term `practice of the College Administration' refers to those practices of the Office of the President, the Office of the Vice President, and the Offices of the Deans based upon written policies of the College Administration and of its District Board of Trustees. (Emphasis supplied.)
Your letter further notes that the board of trustees' rule (adopted in 1973) authorizing the payment of the costs of voluntary physical examination was in effect at the time the contract was signed. Thus, in effect, you are asking whether or not the above-cited provision of a collective bargaining contract `ratifies' or `validates' an expenditure found in AGO 078-12 to be unauthorized by law or regulation of the State Board of Education. Parenthetically, it might be noted that payment of the costs of the college's employees' free voluntary physical examinations is a fringe benefit or perquisite and such benefits are not, in absence of statutory definition, ordinarily embraced within the terms `wages' or `salaries' or `sick leave,' at least with respect to public employees. See AGO 078-12. Further, necessarily implicit in the phrase `all practices of the College Administration,' is the proposition that all such practices are lawful, i.e., authorized or required by law.
Although a collective bargaining agreement is not an ordinary contract, and indeed may be deemed to be more than a contract [see
United Steel Workers of America v. Warrier Gulf Navigation Co.,363 U.S. 574, 578 (1960)], still, valid labor agreements are not exempt from the operation of the law of contracts. 51 C.J.S. LaborRelations ss. 217, 239. Moreover, the power of a public board or agency to contract with a labor organization must be considered in light of statutory law and administrative regulation. 51 C.J.S.Labor Relations s. 218, p. 1031; Lockport Area Special Education Cooperative v. Lockport Area Special Education Cooperative Association, 338 N.E.2d 463 (3 D.C.A. Ill., 1975). Thus, as noted in Pinellas County Police Benevolent Association v. Hillsborough County Aviation Authority, 347 So.2d 801 (2 D.C.A. Fla., 1977):
 A public employee's constitutional right to bargain collectively is not and cannot be coextensive with an employee's right to so bargain in the private sector. Certain limitations on the former's right are necessarily involved. For instance, a wage agreement with a public employer is obviously subject to the necessary public funding which, in turn, necessarily involves the powers, duties and discretion vested in those public officials responsible for the budgetary and fiscal processes inherent in government.
Accordingly, general principles relating to the validity of contracts entered into by public officers are analogous to the problem presented by your inquiry.
The power of a school authority to contract is generally limited to that which is expressly or impliedly conferred by statute and is subject to such constitutional and statutory restrictions as may be imposed. 78 C.J.S. Schools and School Districts ss. 270 and 277; cf. Babcock v. Board of Public Instruction for Dade County,140 So. 644 (Fla. 1932) (county board of public instruction may assume only such obligations as it is authorized by law to assume, and then only pursuant to the method prescribed by statute); National Bank of Duval County, 34 So. 894 (1903) (being a creature of statute, the extent of county's actions toward incurring liability must be limited by statute); Florida Development Commission v. Dickinson, 229 So.2d 6 (Fla. 1970) (if any state or agency exceeds its lawful power or goes outside the scope of discretion vested in it by law in incurring obligations, it is the duty of the comptroller to refuse to issue state warrants in payment of such obligations); and, generally, 20 C.J.S. Counties
ss. 131 and 173.
Recently, in AGO's 078-67 and 078-68, the foregoing principles of law were applied to determine the validity of certain contracts contemplated by the boards of trustees of certain community colleges. In AGO 078-68, I concluded that the board of trustees of a community college lacked the authority to enter into a contract with an institution or agency of a foreign government to disburse funds in lump sum to such agency from which it was to reimburse public officers and employees for travel expenses at a rate or in a manner different from that set forth in the uniform travel expense law. In a similar vein, AGO 078-67 stated that the board of trustees of a community college was not authorized by statute or rule of the State Board of Education to enter into contracts for the purchase of copyrights or copyright licenses for the purpose of distributing and selling certain products; nor was such a board authorized by statute or rule of the State Board of Education to enter into contracts with agencies or institutions of a foreign government. Specifically, in AGO 078-67, I observed:
 Where the contractual powers of public officers are limited by statute or by authorized or valid rules or regulations, contracts entered into by public officers which go beyond such limitations are unauthorized and invalid, regardless of any benefit which might accrue to the public were such contracts to be enforced.
Accord: Brumby v. City of Clearwater, 149 So. 203 (Fla. 1933) (Where municipality was unauthorized to make, execute, or perform a contract, such contract would not be enforced by the courts).But see Knappen v. City of Hialeah, 45 So.2d 179 (Fla. 1950), noting that:
 municipal corporations are liable to an action of implied assumpsit with respect to money or property received by them and applied beneficially to their authorized objects through contracts which are simply unauthorized, as distinguished from those which were prohibited by their charters or some other law bearing upon them, or were malum in se, or violative of public policy.
Therefore, since the board of trustees of a community college is not authorized by statute or authorized rule of the State Board of Education to pay the costs of employees' voluntary physical examinations, it would appear that said board may not lawfully bycontract attempt to ratify or otherwise validate such an expenditure of public funds. It is a well-established principle that public officials cannot do indirectly that which they are prohibited from doing directly. Green v. Galvin, 114 So.2d 187 (1 D.C.A. Fla., 1959).
Moreover, I find no provision in the Public Employees Relations Act, part II, Ch. 447, F. S., which compels an alternative conclusion. My examination of part II of Ch. 447, supra, does not reveal any portion thereof which purports to confer independent authority upon public officers to expend public funds in a manner unauthorized by law. To the contrary, it would appear that s.447.309(3), F. S., implicitly negates such a conclusion. That section provides:
 If any provision of a collective bargaining agreement is in conflict with any law, ordinance, rule, or regulation over which the chief executive officer has no amendatory power, the chief executive officer shall submit to the appropriate governmental body having amendatory power a proposed amendment to such law, ordinance, rule, or regulation. Unless and until such amendment is enacted or adopted and becomes effective, the conflicting provision of the collective bargaining agreement shall not become effective. (Emphasis supplied.)
As noted in AGO 078-67, implied prohibitions of law are as effective as express prohibitions. See also Getzen v. Sumter County, 103 So. 104 (Fla. 1925); Amos v. Mathews, 126 So. 308
(Fla. 1930). See also AGO 076-174 stating that, if a collective bargaining agreement conflicts with any specific statute or ordinance, the agreement does not become operative until the specific statute or ordinance is amended to encompass the agreement; and cf., AGO 077-48 in which I opined that `a public employer, or a duly executed collective bargaining agreement between a public employer and its employees, may not validly make the personnel records of public employees confidential or except or exempt the same from the Public Records Law.'
It is clear from an examination of the foregoing statutory provision that the board of trustees of a community college would be empowered to amend such rules relative to personnel matters as it has been authorized by statute or authorized and valid StateBoard of Education rule to adopt, so as to effectuate a collective bargaining agreement.
In concluding that your question should be answered in the negative, I have not overlooked s. 6 of Ch. 77-343, Laws of Florida, in which the Legislature amended the definition of `legislative body' found at s. 447.203(10), F. S., as follows (the italicized language indicates the amendment to the section):
 `Legislative body' means the State Legislature, the board of county commissioners, the district school board, the governing body of a municipality, or the governing body of an instrumentality or unit of government having authority to appropriate funds and establish policy governing the terms and conditions of employment and which, as the case may be, is the appropriate legislative body for the bargaining unit. For purposes of s. 447.403 the board of trustees of a community college shall be deemed to be the legislative body with respect to all employees of the community college.
Thus, for purposes of the resolution of impasses in collective bargaining as delineated in s. 447.403, F. S., the board of trustees is designated the `legislative body.' Hence, under the statute, in the event of a dispute, the decision of the special master, as well as recommendations for settling the dispute prepared by the special master, the chief executive officer of the public employer, and the employee organization, should be submitted to the board of trustees. Pursuant to s. 447.403(4)(c), the legislative body or a duly authorized committee thereof is then required to conduct a public hearing in which the parties explain their positions with respect to the recommendations of the special master. Thereafter, `the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved.' Section 447.403(4)(d),supra.
Clearly, however, the mere designation of the board of trustees of a community college as the `legislative body' for purposes ofimpasse resolution does not give legislative powers to such a board. Therefore, I must reiterate my conclusion that the `Past Practices' article in the collective bargaining agreement under discussion cannot `ratify' or otherwise validate an unauthorized
rule or practice of the community college board of trustees.
Prepared by: Patricia R. Gleason, Assistant Attorney General